John JOYCE, Appellant,

v.

RJR NABISCO HOLDINGS CORP.; RJR Nabisco, Inc.; Nabisco Brands, Inc.; R.J. Reynolds Tobacco Co.

No. 96–5434.

United States Court of Appeals, Third Circuit.

Argued May 23, 1997.

Decided Sept. 16, 1997.

Paul Schachter, Nancy Macirowski (Argued), Reinhardt & Schachter, Newark, NJ, for Appellant.

Robert H. Bernstein (Argued), John P. Quirke, Epstein, Becker & Green, Newark, NJ, for Appellee R.J. Reynolds Tobacco Co.

Before: SLOVITER, Chief Judge, and ROTH, Circuit Judge and POLLAK,[1] District Judge.

## OPINION OF THE COURT

ROTH, Circuit Judge.

John Joyce, the plaintiff in this case, terminated his employment with R.J. Reynolds Tobacco Co. ("RJR") in 1989, after suffering from depression and receiving short-term disability benefits. Joyce claims that RJR failed to apprise him of his eligibility for long-term disability ("LTD") benefits and also failed to accommodate his disability, thereby forcing him to resign. The complaint, originally filed in the Superior Court of New Jersey, alleged breaches of contract and violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5–1 ("NJLAD"). Defendants removed the complaint to federal court; the district court denied Joyce's motion to remand on the grounds that the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 ("ERISA"), completely preempted Joyce's claims. Joyce filed an amended complaint

---

1. Honorable Louis H. Pollak, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

alleging violations under ERISA, and the district court granted summary judgment in favor of the defendants on all counts. For the reasons set forth below, we conclude that the district court did have removal jurisdiction and that summary judgment was properly entered against Joyce on his ERISA claims. The case will be remanded, however, to permit Joyce to plead a supplemental state law cause of action under the NJLAD for failure to accommodate his disability, which claim the district court erroneously concluded was preempted by ERISA.

## I. Background

Joyce received a Bachelor of Science degree in Operations and Systems Management in 1985 from Indiana University, where he was a member of the Honor Society. Joyce began working for Nabisco Brands, Inc., in November of 1985. From 1985 until August of 1988, Joyce worked for Nabisco Brands in Wilkes–Barre, Pennsylvania, as an Inventory Analyst. In 1988, Joyce was transferred to Winston–Salem, North Carolina, to work for RJR, a wholly owned subsidiary of RJR Nabisco. At RJR, Joyce worked as a Deployment Planner and enjoyed a somewhat higher salary than he had at Nabisco Brands.

Around the time of his transfer, Joyce received an RJR benefits manual entitled "A Detailed Guide to Employee Benefits Plans." The manual included information about medical and disability benefits and about other benefits available to RJR employees. Joyce read the manual and made detailed notes and markings in his copy.

Joyce did not last long at his new job in North Carolina. On September 12, 1988, he was ordered to meet with managers Dennis Andruskiewicz and Anthony Calore, who told Joyce that they were displeased with his performance at RJR. Andruskiewicz gave Joyce a memo on September 21, 1988, which explained that Joyce was not given the difficult assignment of taking over deployment at the Puerto Rico plant because, based on Joyce's job performance, the managers felt that he would not successfully complete the assignment. Andruskiewicz also told Joyce that he had three days to improve his performance and ordered Joyce to see Henry Lewis of the Employee Counseling Department.

Lewis referred Joyce to Dr. Luprecht, a psychiatrist. On September 26, 1988, Dr. Luprecht diagnosed Joyce as being seriously depressed and placed him on short-term disability under RJR's benefits plan. Shortly thereafter, Joyce left North Carolina for his parents' home in Basking Ridge, New Jersey. He sought treatment for depression from several doctors, including Dr. Eli Katz of King of Prussia, Pennsylvania.

RJR asserts that on February 6, 1989, its benefits department sent Joyce information about long-term disability benefits. An employee in the medical department certified that she mailed the benefits information to Joyce at the Basking Ridge address that he gave to RJR. Joyce claims that he never received this mailing.

On February 21, 1989, Dr. Katz certified, on Joyce's benefits claim form, that "Pt. is improving. He should come off disability and be ready to return to work 3/1/89 unless he decompensates." According to Joyce, Dr. Katz told him that he should not return to his former position at RJR, which would make Joyce's depression worse, but that Joyce should work in a different or restructured position. Joyce claims that he also thought that he would no longer be eligible for short-term disability benefits because he understood that the deadline for those benefits expired on March 1, 1989. In fact, the plan provides for up to 26 weeks of short-term disability benefits. Joyce thus remained eligible for those benefits until the end of March 1989.

Joyce contacted RJR repeatedly during the last half of February 1989 to ask whether he could be placed in a different position and to inquire about his "rights and options under the circumstances." Dr. Robert Fletcher, medical director at RJR, agreed that he would look for an alternative position for plaintiff. When Joyce called back, Dr. Fletcher referred him to Frank Beck, who told Joyce that his former position was available. Joyce told Beck he would have to resign rather than attempt to work in his

former job, and Beck agreed to check if another position was available.

Beck ultimately told Joyce that RJR had a hiring freeze in place and therefore no other position was open. Joyce also talked to Mike Judkins and attempted to contact Phil Gazaway, both of whom Joyce believed worked in the benefits department. According to Joyce, he was not told that he might be eligible for long-term disability benefits. Believing that he was no longer eligible for short-term benefits and that he could not successfully perform in his old job, Joyce sent a resignation letter to Andruskiewicz on March 1, 1989. The letter read:

> My Doctors have elected to take me off Accident & Sickness status effective 3/1/89. While I am in improved health, my physicians have cautioned me against returning to my position. It is my feeling that my skill level will continue to be below an acceptable standard, and so my returning to work in the same capacity will be neither beneficial for the company or myself.
>
> I have truly enjoyed my years at RJR–Nabisco, particularly the people. Obviously, my current situation represents a rather large personal setback.
>
> I hearby resign.
>
> Sincerely,
>
> John Joyce.

According to his affidavit, Joyce did not learn that he might be eligible for long-term benefits until July of 1992, when his father suggested that he contact RJR to ask if such benefits were available. At that time, the benefits department informed Joyce that because he had terminated his employment with RJR, he was not eligible for long-term disability benefits.

On November 30, 1993, Joyce filed suit in the Superior Court of New Jersey against RJR Nabisco Holdings Corp., Nabisco Brands, Inc., and other corporate affiliates. The first of the two counts in the complaint alleged that defendants violated the New Jersey Law Against Discrimination by failing to accommodate Joyce's disability and by constructively discharging Joyce by not informing him of his eligibility for long-term disability benefits or finding a position that he could perform despite his disability. The second count alleged that the long-term disability plan was a contract between Joyce and the defendants, and that the defendants breached the contract by violating an implied covenant of good faith and fair dealing.

The defendants removed the complaint to the United States District Court for the District of New Jersey on January 13, 1994. The district court denied Joyce's motion to remand on May 2, 1994, in a memorandum opinion. ERISA, the district court reasoned, preempted Joyce's claims under the complete preemption doctrine. Noting that ERISA itself provides that state law claims that "relate to" employee benefits plans are preempted, the court concluded that Congress intended to preempt Joyce's claims, making remand inappropriate.

Joyce filed an amended complaint in August of 1994. The new complaint made no allegations under New Jersey law but included two counts under ERISA: breach of fiduciary duty and improper termination. The improper termination claim alleges that defendants forced Joyce to resign in order to prevent him from receiving long-term disability benefits. Joyce based the breach of fiduciary duty claim on RJR's alleged failure to provide him with information about long-term disability benefits despite his conversations with RJR personnel about his inability to continue in his old job.

In August of 1995, the parties agreed to stay discovery until the court ruled on RJR's motion for summary judgment.[2] On June 17, 1996, the district court granted defendant's motion and ordered that "plaintiff's complaint is hereby dismissed in its entirety, with prejudice." Joyce filed a notice of appeal on July 15, 1996.

## II. Jurisdiction

▇ Our first issue is jurisdictional. The defendants removed this case based on 28

---

2. In March 1995, the parties agreed that RJR was the only defendant potentially liable for the claims made in the amended complaint; the parties accordingly agreed to dismiss the other defendants.

U.S.C. § 1441(a) which provides in relevant part that:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Removal is thus governed by the district court's original jurisdiction. The district court concluded that federal jurisdiction was appropriate under 28 U.S.C. § 1331, which provides for federal question jurisdiction, because the complaint arose under ERISA. We exercise plenary review. *Brown v. Francis,* 75 F.3d 860, 864 (3d Cir.1996).

■ As the district court correctly reasoned, the "well-pleaded complaint rule" requires that, for removal to be appropriate, a federal question must appear on the face of the complaint. Dist. Ct. Op. at 3. *See also Dukes v. U.S. Healthcare,* 57 F.3d 350, 353 (3d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995). In this case, because Joyce pled his complaint based solely on New Jersey law, no federal question appears on the face of the complaint. Under a narrow exception to the well-pleaded complaint rule, however, Congress may "completely pre-empt" a particular area of law such that any claim that falls within this area is "necessarily federal in character." *Dukes,* 57 F.3d at 354 (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)). In such a case, removal would be appropriate.

■ The district court in this case erred in failing to distinguish between the complete preemption doctrine for jurisdictional purposes and ordinary preemption, which merely constitutes a defense to a state law cause of action. Complete preemption occurs when federal law so completely preempts an entire area of law that the state cause of action is entirely displaced by federal law. If this doctrine applies, the district court has removal jurisdiction, even if the well-pleaded complaint rule is not satisfied. *Dukes,* 57 F.3d at 355. However, if a state claim does not come within this doctrine, the well-pleaded complaint rule still applies, and the district court does not have removal jurisdiction unless a federal cause of action is pled. Even if the complete preemption does not apply, the defendant may nonetheless claim federal preemption as defense.

*See generally,* 16 *Moore's Federal Practice,* 107.14[4][b][ii] and [iii] (Matthew Bender 3d ed.1997).

The district court based its preemption analysis on § 514(a) of ERISA, which preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" as defined by ERISA. 29 U.S.C. § 1144(a). Relying on cases that interpret this section, the court concluded that a law "relates to" an employee benefits plan if it has a "connection with or reference to" such a plan. Dist. Ct. Op. at 4 (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90–91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983)). Apparently applying this test, and the cases based on § 514(a), *see, e.g., Nolan v. Otis Elevator Co.,* 102 N.J. 30, 505 A.2d 580 (1986), the court concluded that plaintiff's claims were preempted by ERISA.

■ ERISA preemption under § 514(a), standing alone, does not, contrary to the district court's reasoning, create federal removal jurisdiction over a claim pled under state law in state court. *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 25–26, 103 S.Ct. 2841, 2854–55, 77 L.Ed.2d 420 (1983). Only state claims that come within ERISA's civil enforcement provisions in § 502(a) are completely preempted such that removal to a federal court is appropriate. *Metropolitan Life,* 481 U.S. at 63–65, 107 S.Ct. at 1546–47.[3] As this Court has explained:

---

3. *Metropolitan Life* considered the preemption of claims under ERISA § 502(a)(1)(B), not claims under § 502(a)(3). Our opinion in *Dukes,* however, speaks in terms of § 502 claims generally. This is consistent with the opinions of other Courts of Appeals, which have found that the

Section 514 of ERISA defines the scope of ERISA preemption.... The *Metropolitan Life* complete-preemption exception, on the other hand, is concerned with a more limited set of state laws, those which fall within the scope of ERISA's civil enforcement provision, § 502. State law claims which fall outside of the scope of § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete-preemption principles established in *Metropolitan Life*.

*Dukes,* 57 F.3d at 355.

Therefore, under *Dukes* and *Metropolitan Life,* the relevant inquiry in this case is whether Joyce's state law claims come within the scope of ERISA § 502, not, as the district court reasoned, whether they are preempted under ERISA § 514(a). Section 502(a) of ERISA provides, in part, that:

A civil action may be brought—

(1) by a participant or beneficiary—

(A) for the relief provided in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to 7 enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan ...

29 U.S.C. § 1132.

▆▆▆ In Count 1 of the original complaint, Joyce alleged that:

38. Defendants knew that plaintiff was eligible for long-term disability benefits under defendant's plan.

complete preemption doctrine also applies to claims of breaches of fiduciary duties under § 502(a)(3). *See Romney v. Lin,* 94 F.3d 74, 81 (2d Cir.1996), *rehearing denied,* 105 F.3d 806 (2d

39. Defendants should have advised plaintiff that because they did not offer him a suitable position which accommodated his handicap, plaintiff was eligible for benefits under defendant's long-term disability plan....

43. The failure of defendants either to place plaintiff in a job which he could perform consistent with his disability or to advise him that he was eligible for long-term disability was a constructive discharge from the company.

These allegations come within ERISA § 502. Under subsection (a)(3), individuals may recover for breaches of the fiduciary duties imposed by ERISA. *Bixler v. Central Pa. Teamsters Health–Welfare Fund,* 12 F.3d 1292 (3d Cir.1993); *Varity Corp. v. Howe,* —— U.S. ——, ——, 116 S.Ct. 1065, 1074, 134 L.Ed.2d 130 (1996). As *Bixler* makes clear, if a fiduciary "is aware of the beneficiary's status and situation," the fiduciary "has an obligation to convey complete and accurate information material to the beneficiary's circumstance," even if the beneficiary does not specifically ask for that information. 12 F.3d at 1300. Joyce's allegations that RJR knew he was eligible for benefits but failed to so inform him, come squarely within § 502(a)(3). We accordingly affirm the district court's conclusion that it had removal jurisdiction.

▆▆▆ We disagree with the district court's conclusion, however, that ERISA preempts Joyce's claim that RJR failed to accommodate his disability in violation of the NJLAD. Dist. Ct. Op. at 6. Joyce's original complaint alleged both that RJR "could have accommodated plaintiff's handicap" and that defendants "failed to make a reasonable accommodation of plaintiff's disability by assigning plaintiff to a suitable position or by restructuring plaintiff's position." Complaint ¶¶ 41, 42. Contrary to the district court's conclusion, this claim—at least on the present state of the record—is not preempted by ERISA § 514.[4] This claim does not have as its basis

Cir.1997); *see also Kramer v. Smith Barney,* 80 F.3d 1080, 1083 (5th Cir.1996).

4. If Joyce claims that RJR failed to accommodate his disability in order to deny him benefits, this

the denial of employee benefits, the failure to provide information about such benefits, or the failure to comply in some other way with ERISA. Its sole relationship to an employee benefits plan is that upon termination from his job, Joyce was no longer eligible for the long-term disability benefits. This does not convert what is, in essence, an employment discrimination claim into one that "relates" to ERISA within the meaning of § 514.

The district court relied on *Nolan v. Otis Elevator, Co.*, 102 N.J. 30, 505 A.2d 580 (1986), for the proposition that the "only way a NJLAD claim involving benefits could survive as a state action is if a symbiotic relationship between the state statute and a federal statute existed." Dist. Ct. Op. at 6. *Nolan*, however, involved a claim that an employer offered special retirement benefits to employees over 55 that it did not offer to those under the age of 55. The entire claim was, therefore, predicated on the denial of the opportunity to participate in an employee benefit plan. Here, unlike *Nolan*, the claim that defendant did not accommodate Joyce's disability can stand completely separate from the issues surrounding the benefits plan.

In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–900, 77 L.Ed.2d 490 (1983), the Supreme Court considered whether ERISA preempted a state law which prohibited employee benefits plans from discriminating on the basis of pregnancy. The Court concluded that this provision of the state law was preempted but made clear that:

> Of course, § 514(a) pre-empts state laws only insofar as they relate to plans covered by ERISA. The Human Rights Law, for example, would be unaffected insofar as it prohibits employment discrimination in hiring, promotion, salary, and the like.

463 U.S. at 98 n. 17, 103 S.Ct. at 2900 n. 17. This Court's analysis in *United Wire, Etc. v. Morristown Mem. Hosp.*, 995 F.2d 1179 (3d Cir.1993), points to the same conclusion:

A rule of law relates to an ERISA plan if it specifically designed to affect employee benefit plans, it is singles out such plans for special treatment, or if the rights or restrictions it creates are predicated on the existence of such a plan. Because we are here dealing with a statute of general applicability that is designed to establish the prices to be paid for hospital services, which does not single out ERISA plans for special treatment, and which functions without regard to the existence of such plans, the cases which have cordoned off this area of preemption are inapplicable.

995 F.2d at 1192 (footnotes omitted). In providing a cause of action for failing to accommodate a disability, the NJLAD is not based on the existence of an employee benefits plan, is not intended to affect such plans, and does not single them out.

Our conclusion finds support in several recent Supreme Court cases, most notably *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), and *De Buono v. NYSA–ILA Med. and Clinical Services*, ––– U.S. –––, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997). In *Travelers*, the Court refused to read the term "relate to" in § 514 literally, reasoning that to do so would provide no stopping point for ERISA preemption. 514 U.S. at 655–57, 115 S.Ct. at 1677. Instead, the Court directed, the objectives of ERISA must provide the basis for understanding the scope of Congress' intention to preempt state laws. *Id.* The Court applied this analysis in *De Buono* and concluded that ERISA did not preempt a state tax on gross receipts of health care facilities. The law did not refer to ERISA or ERISA plans, did not require the provision of employee benefits, and did not depend upon benefits plans to provide the cause of action. ––– U.S. at –––, 117 S.Ct. at 1752. The same is true here.

■ Joyce should have been permitted to replead the complaint to include a NJLAD

claim may be preempted by ERISA. *See, e.g., Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). This was Joyce's allegation in the amended complaint. In that complaint, however, Joyce was forced to

plead only under ERISA, and for this reason may have dropped the allegation that appeared in the original complaint that RJR simply failed to accommodate his disability.

claim for failure to accommodate his disability.[5] RJR argues that Joyce has waived this claim because he did not seek to file an amended complaint in federal court that included a supplemental claim under the NJLAD. The district court's opinion effectively foreclosed this option, however, by holding that ERISA § 514 preempted Joyce's claim that the defendant failed to accommodate his disability. Joyce specifically appealed this ruling, and we accordingly conclude that he has not waived this claim.[6]

### III. Summary Judgment

The amended complaint alleges that RJR breached its fiduciary duties to Joyce and that RJR forced Joyce to resign in order to avoid paying him long-term disability benefits. The district court granted summary judgment on both counts. We exercise plenary review over the district court's decision, *Glaziers and Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Securities,* 93 F.3d 1171, 1178 (3d Cir.1996), and evaluate whether there is a "genuine issue as to any material fact." Fed.R.Civ.P. 56(c). In making this determination, we consider the record in the light most favorable to Joyce, and draw all reasonable factual inferences in his favor. *See Glaziers,* 93 F.3d at 1178.

#### A. Fiduciary Duty Claim

ERISA provides that a fiduciary shall

discharge his duties with respect to a plan in the interest of the participants and beneficiaries and . . . .

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. . . . .

29 U.S.C. § 1104(a)(1). We also look to the common law of trusts to delineate a fiducia-

ry's obligations under ERISA. *Ream v. Frey,* 107 F.3d 147, 154 (3d Cir.1997).

This Court has held that a fiduciary's obligations include the duty to provide complete and accurate information to participants and beneficiaries. This duty extends beyond just responding to requests about specific benefits; instead, if the fiduciary has reason to believe that a beneficiary is eligible for benefits that are not the precise subject of his or her request, the fiduciary may violate its duties if it fails to provide information about those benefits. *Jordan v. Federal Express Corp.,* 116 F.3d 1005, 1016 (3d Cir. 1997); *Glaziers,* 93 F.3d at 1182. Thus if a beneficiary requests information about medical and death benefits, the fiduciary's failure to inform her that she could purchase continuation coverage could constitute a breach of fiduciary duties, even if she did not specifically ask for that information. *Bixler v. Central Pa. Teamsters Health–Welfare Fund,* 12 F.3d 1292 (3d Cir.1993). Similarly, a fiduciary has not discharged its obligations when an employee asks about a program for which the employee is not eligible, and the fiduciary fails to give him information about a similar program for which he is eligible. *Eddy v. Colonial Life Ins. Co.,* 919 F.2d 747 (D.C.Cir. 1990). The question in this case is whether Joyce has come forward with enough evidence to withstand summary judgment on his claim that RJR violated its fiduciary duties when it failed to provide him specific information about long-term disability benefits, where the company had already provided him with a comprehensive benefits manual which included extensive information about these benefits.

We begin with the evidence that Joyce has put in the record, and we evaluate whether it creates a material issue of fact as to whether RJR had an obligation to provide Joyce with information about LTD benefits that it did not fulfill. According to Joyce's affidavit, he told RJR that Dr. Katz recom-

---

**5.** The district court had jurisdiction over such a claim under 28 U.S.C. § 1367.

**6.** RJR argues that even if Joyce has a LAD claim that is not preempted, RJR is entitled to summary judgment on that claim because North Car-

olina, not New Jersey, law applies, and the North Carolina statute of limitations has run. Joyce argues that New Jersey law applies. We leave this dispute for the trial court to resolve, if necessary.

mended that Joyce return to a different position at RJR. RJR's answer to the complaint makes this clear:

> defendants admit that Dr. Katz advised Dr. Robert G. Fletcher in or about February 1989 that he intended to release plaintiff to return to work on March 1, 1989, and recommended that plaintiff be reassigned to another position, and that Dr. Fletcher advised plaintiff in or about February, 1989, that Defendant R.J. Reynolds would explore and evaluate job alternatives for plaintiff, but would need some type of written direction from the plaintiff's psychiatrist as to the specific job restrictions appropriate for plaintiff.

Defendant's Answer at ¶ 29, Joint Appendix at 50. Dr. Katz, who was treating Joyce, certified on February 21, 1989, in a "Notice of Continuation or Termination of Disability" that "Pt. is improving. He should come off disability & be ready to return to work 3/1/89 unless he decompensates."

Joyce has also come forward with evidence, in the form of an affidavit, that he "made approximately ten phone calls to RJR between February 14 and March 1, 1989 to inquire as to my rights and options under the circumstances." The affidavit further states that Joyce told Dr. Fletcher that Dr. Katz advised him to return to a position "with less stress," and that "I [Joyce] advised Dr. Fletcher that I did not believe that I could perform all the duties and responsibilities of my former position satisfactorily." Frank Beck at RJR, according to Joyce's affidavit, said that he would look for an alternative job for Joyce, but eventually said that due to a hiring freeze no other positions were available. Joyce also claims that he called RJR employees who he believed worked in the benefits department, to ask about his options when the short-term benefits expired.

This information did not, in our view, trigger an obligation by RJR to give Joyce more information about LTD benefits. We cannot say that RJR knew, or had good reason to know, that Joyce was likely to be eligible for such benefits. Joyce's short-term disability ended because his doctor refused to certify him as disabled—this fact would disqualify Joyce for long-term benefits as well. Although Joyce claims that Dr. Katz directed that he return to work only if he received a new or restructured position, Joyce has provided no evidence that he—or Dr. Katz—directly informed RJR of such a condition. Indeed, there is no direct evidence, other than Joyce's own testimony, that Dr. Katz's opinion that Joyce could return to work was conditional.[7] Dr. Katz's certification on the claims form does not mention a return to a new or different position. Moreover, if the certification was, in fact, conditional, Joyce could have returned to Dr. Katz to continue his short-term benefits until the end of March after RJR failed to give him a new position.

Equally important, RJR is a large corporation that provided Joyce with a benefits manual explaining both long and short-term disability benefits. This manual, which Joyce received and read only shortly before his short-term disability began, detailed the eligibility requirements and other terms of the long-term disability plan, including the claim procedures. Of course, had Joyce requested information about long-term benefits, or made clearer that he was interested in his eligibility for them, then RJR may have had an obligation to provide him with more information or a claims form. But this, as we have explained, was not the case. Finally, Joyce was a well-educated employee, with a Bachelor of Science degree from a major university, who worked in a management position, and who conceded that he read the benefits manual only shortly before becoming disabled. Under the circumstances of this case, the RJR benefits department had no special obligation to make sure that Joyce understood the manual's contents.

Joyce relies heavily on *Bixler*. In *Bixler* the widow of a truck driver failed to elect to continue her family's medical insurance, even

---

7. Even Joyce's testimony on this point is not very strong. In his affidavit, Joyce states that: "Dr. Katz agreed with me that I should not return to my former position with all the duties and responsibilities that I formerly had, but that I should be placed in a different or restructured position with less responsibility and less stress." Joyce does not state that Dr. Katz would have certified him as disabled if Joyce were forced to return to his old position.

though she could have received reimbursement for her husband's unpaid medical expenses had she done so. 12 F.3d at 1302. Mrs. Bixler erroneously believed that she was not eligible for those benefits and claimed that the fund and the employer violated their duties under ERISA by failing to explain that she was so eligible. This Court affirmed summary judgment on behalf of the welfare fund because Mrs. Bixler admitted that she did not remember her conversations with the fund administrator, and the fund administrator testified that he had told her she was eligible for continued coverage. *Id.* 12 F.3d at 1301. Mrs. Bixler also conceded that the COBRA notice was properly sent to her. With respect to the employer, however, we reversed summary judgment, reasoning that

> we think that there is evidence from which a trier of fact could infer that [the general manager of the employer] knew the Bixlers and their situation well enough to be aware of Mr. Bixler's hospitalization and the attendant medical expenses. If Mr. Welsh knew that Mr. Bixler's death left Mrs. Bixler with substantial unpaid medical expenses and that she could receive reimbursement for those expenses .... the failure to advise her of the available benefits might be found to be a breach of fiduciary duty despite the fact that her inquiry was limited to the availability of a death benefit.

*Id.* 12 F.3d at 1302.

In this case, on the other hand, there is not sufficient evidence from which a trier of fact could conclude that RJR knew Joyce was eligible for LTD benefits. Indeed, Joyce has presented little evidence that he was in fact eligible for those benefits at all in Dr. Katz's

estimation—neither his affidavit nor his deposition states that Dr. Katz conditioned his return to work on RJR finding a new position for him.[8] Instead, Joyce argues that we can infer his eligibility for long-term benefits from his statement that "Dr. Katz recommended that I return to a position with less responsibility." Similarly, Joyce argues that RJR should have inferred that Dr. Katz permitted Joyce's return to work only if RJR gave Joyce a new position, even though there is no evidence that Joyce or Dr. Katz actually said this to RJR. From this inference, the argument goes, RJR should have known that Joyce might be eligible for LTD benefits if RJR did not provide him with a new job. This evidence, in light of the benefits manual provided to Joyce and the other evidence canvassed above, is simply too attenuated to withstand RJR's motion for summary judgment.[9] *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (reasoning that summary judgment may be granted where evidence is "not significantly probative").

### B. Constructive Discharge Claim

■ The second count of Joyce's amended complaint alleges that RJR "forced [Joyce] to resign in order to prevent [Joyce] from attaining long-term disability benefits which[Joyce] was eligible and entitled to receive." If true, such conduct would violate ERISA § 510, which provides:

**Interference with protected rights**

> It shall be unlawful for any person to discharge,fire, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an em-

---

8. Although Joyce now has an expert prepared to testify that he was not able to return to work on March 1, 1989, what is relevant here is what RJR knew about Joyce's condition and about Joyce's eligibility for benefits.

9. The district court also granted summary judgment on the fiduciary duty claim on an alternative basis: RJR claims that it sent LTD information and a claim form to Joyce in February of 1989. The district court relied on the "general presumption" that "an item properly addressed and mailed has been received by the addressee," and that by mailing the information—whether or

not it was received—RJR had satisfied its obligations to make a good faith effort to discharge any fiduciary duty it had. Dist. Ct. Op. at 11. Although we need not decide this issue because we affirm the grant of summary judgment on alternative grounds, we do note that Joyce has pointed to both his testimony that he received no such information, and a letter from RJR explaining that Joyce did not receive timely COBRA information because of "delays in [RJR]'s internal reporting system." (Appendix at 287), both of which could support a claim that RJR did not send the information at all.

ployee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act. The provision of section 1132 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. The district court concluded, however, that Joyce had not come forward with enough evidence to withstand a motion for summary judgment on this claim. We agree.

■ The touchstone of a § 510 claim, as the text of the statute makes clear, is an improper motive. Thus one component of a prima facie § 510 claim is that the action was "taken for the purpose of interfering ... with the attainment of any right to which an employee may be entitled." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 922 (3d Cir. 1990) (quoting *Gavalik v. Continental Can Co.*, 812 F.2d 834 (3d Cir.1987)). In this case, however, Joyce has not come forward with evidence that suggests that RJR acted with a motive prohibited by § 510.

It is undisputed that Joyce requested a different position, that RJR refused to comply with this request, and that RJR offered to let Joyce return to his old job. Joyce has not controverted RJR's statement that it did not find him a new position because of a hiring freeze. Finally, construing the evidence in Joyce's favor, one could conclude that when RJR refused to find Joyce a new job, RJR knew that Joyce might resign because he did not think he could handle his old job.

This evidence does not substantiate Joyce's claim that RJR refused to find him a new position in order to deny him LTD benefits. As we explained above, RJR had no reason to know that Joyce was potentially eligible for such benefits. RJR thus had no reason to try to force Joyce to quit in hopes that he would thereby become ineligible for such benefits.[10] Without this information, RJR had no reason to think that Joyce's decision not to return to the company would affect his benefits. Had Joyce returned to work only to be fired by RJR before he had an opportunity to file another claim for short-term disability, this could give rise to an inference that RJR sought to avoid making disability payments, but that is not the case here.

■ As the district court observed, constructive discharge claims under § 510 of ERISA are governed by an "objective standard," which asks whether the employer "creat[ed] conditions so intolerable that a reasonable person would resign." *Berger*, 911 F.2d at 923. Under this standard, the district court reasoned, situations in which an employee becomes frustrated with the "pressures" or "challenges" of a job do not constitute constructive discharge, and therefore RJR's action of "requiring an employee to remain in his or her position cannot reasonably be an intolerable condition" of employment. Dist. Ct. Op. at 12, 14.

We refuse to create a bright line rule that forcing an employee to remain in one particular job could never, under any circumstances, provide the predicate for an ERISA § 510 claim. In this case, however, Joyce has come forward with no evidence from which a reasonable fact finder could conclude that RJR offered him his old job back with the motive required to prevail under § 510. As we have explained, RJR had no reason to believe that offering Joyce his job back—even under the assumption that Joyce would not be able to adequately perform at that job or would refuse to accept it—would disqualify Joyce for disability benefits. In this situation, no reasonable fact finder would conclude that a desire to terminate Joyce's benefits motivat-

---

**10.** Under the RJR benefits plan, eligibility for LTD benefits ends when employment with RJR terminates.

ed RJR's offer to Joyce that he return to his old position.

## IV. Conclusion

The district court had jurisdiction over this case and did not err in granting summary judgment to RJR on Joyce's claims under ERISA. The district court erroneously concluded, however, that ERISA preempted Joyce's claim under the NJLAD that RJR failed to accommodate his disability. The case is therefore remanded to permit Joyce to file an amended complaint making this claim under the NJLAD.