OPINION OF THE COURT
FEIKENS, District Judge:

I.Background

In 1998, Appellant James Wood (“Wood”) filed suit in a New Jersey state court against his former employer, The Prudential Insurance Company of America (“Prudential”). In his complaint, Wood pleaded four counts against Prudential: discrimination based on a New Jersey statute[1]; defamation; outrage; and discrimination based on the New Jersey constitution.[2] Wood alleged that Prudential discriminated against him by terminating his employment to avoid paying benefits[3] to him and his dependents. In this state suit, Wood sought, inter alia, compensatory damages, damages for humiliation, pain and suffering, and punitive damages. Prudential removed the suit to the U.S. District Court of New Jersey asserting that the Employee Retirement Income Security Act of 1974 (“ERISA”), 29 U.S.C. § 1001 et seq., completely preempted both Wood’s claim of discrimination under the state statute and his claim of discrimination under the state constitution. In denying Wood’s motion to remand the suit to state court, the United States District Court held that ERISA completely preempted those two claims. The court took supplemental jurisdiction over the claims of defamation and outrage and construed the claim of outrage as a claim of intentional infliction of emotional distress.
Wood and his wife, Karen Wood, individually and on behalf of their son, Matthew Wood, then filed suit later in 1998 in the U.S. District Court of New Jersey alleging that Prudential’s termination of Wood’s employment violated ERISA and, since Matthew Wood was disabled, that it violated the Americans with Disabilities Act (“ADA”). For his ERISA claim, Wood sought equitable relief and, for his ADA claim, Wood sought compensatory and other damages. The District Court dismissed the ADA claim, consolidated the two cases, and granted Prudential’s motion to submit all claims to arbitration.

II.Issues

Several questions are presented to us on appeal:
1) Is complete preemption of a state claim that is subject to Section 510 of ERISA warranted even if the state claim prays for -relief arguably not provided for in Section 502(a) of ERISA?
2) Assuming that complete preemption applies, may the District Court compel arbitration of his claims under the facts of this case?
3) In order to rule on these questions, did the District Court, and do we, have jurisdiction?

III.Complete Preemption

A.
The District Court denied Wood’s motion to remand holding that ERISA completely preempted Wood’s claim of discrimination based on the state statute. The District Court read that claim as an assertion “that depriving him of his retirement benefits was the motivating purpose for, and not merely a consequence of, his termination.” We agree with this reading.[4]
*677 In his state complaint, Woods alleges generally that:
[T]he real reason that ... Prudential terminated [his] employment ... was its knowledge that, because he was fifty-one years old, and had more than twenty years of service with Prudential, plaintiff Jim Wood was about to become eligible for full retirement benefits. Defendant Prudential knew that the vesting of those benefits would require it to continue to be responsible for the medical expenses of the plaintiff and of his dependents, including the plaintiffs son, Matthew Wood.
State Complaint ¶ 4, A-16. He repeats this general allegation in each of his four state law claims. State Complaint ¶¶ 7, 10, 13, 16, A-19-21. Since Wood’s son suffers from severe head injuries due to a car accident, Wood alleges that the medical bills for his son run into the “millions of dollars.” State Complaint ¶ 5, A-17.
Wood argues that his complaint contains claims of age and disability discrimination entirely separate from this benefits-defeating allegation. But, we find nothing in his complaint other than an allegation that Prudential terminated Wood’s employment to avoid paying health and retirement benefits.
Wood argues that his complaint alleges discrimination based on age because it referred directly to his age. The relevant portion of the allegation reads: “[B]ecause he was fifty-one years old, and had more than twenty years of service with Prudential, plaintiff Jim Wood was about to become eligible for full retirement benefits.” State Complaint ¶ 4, A-16. It seems obvious that Wood’s reference to age, like the accompanying-reference to his length of service, establishes the allegation that Wood was “about to become eligible for full retirement benefits.” His age is relevant only insofar as it affected his eligibility for benefits. We agree with the District Court when it noted: “Aside from nearing early retirement age, there are no facts alleged in the Complaint to support a claim that Wood’s age had any bearing on Prudential’s decision to terminate him.”
Wood also argues that his state court complaint alleges discrimination based on the disability of Wood’s son. His complaint mentions the disability of his son only in the context of Prudential’s potential obligation for the high medical expenses of his son. Since Wood’s state discrimination claim provides no rationale for Prudential’s treatment other than to avoid paying benefits to him and to his dependents, we read the complaint as alleging that Prudential’s termination of Wood’s employment had a benefits-defeating motive.
B.
A claim of discharge based on a “benefits-defeating” motive comes under Section 510 of ERISA. That section prohibits the “discharge of a participant or beneficiary for the purpose of interfering with the attainment of any right to which such participant may become entitled.” § 510, 29 U.S.C. § 1140. “Congress enacted this section to prevent unscrupulous employers from discharging or harassing their employees in order to prevent them from obtaining their statutory or plan-based rights.” Zipf v. American Telephone and Telegraph Co., 799 F.2d 889, 891 (3rd Cir. 1986); see, also, Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).
Section 510 of ERISA does not stand alone; by its terms it gains its enforcement vitality from Section 502. Section 510 provides: “The provisions of [section 502] of this title shall be applicable in the enforcement of this section.” § 510, 29 U.S.C. § 1140. Thus, any state claim that falls within Section 510 is necessarily within Section 502.
C.
Federal courts have jurisdiction over claims “arising under the Constitu *678 tion, law or treaties of the United States.” 28 U.S.C. § 1331. Under the well-pleaded complaint rule, a court determines whether a claim “arises under” federal law from a plaintiffs complaint. Metropolitan Life v. Taylor, 481 U.S. 58, 62, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (“It is long-settled law that a cause of action arises under federal law only when the plaintiffs well pleaded complaint raises issues of federal law.”). A plaintiff is, thus, considered the “master of the complaint.” Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).
The United States Supreme Court has recognized the doctrine of complete preemption as a corollary or an exception to the “well-pleaded complaint” rule. Metropolitan Life, 481 U.S. at 63-64, 107 S.Ct. 1542. Under this complete preemption exception, the Court has held that “Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.” Id. Since ERISA Section 502(a) completely preempts a state claim, removal of Wood’s state claim to federal jurisdiction is proper. See id. at 66, 107 S.Ct. 1542 (“Congress has clearly manifested an intent to make causes of action within the scope of 502(a) removable to federal court.”); Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 172 (3rd Cir.1997).
We reject Wood’s contention that, because none of the relief he requested in his state claim is available under Section 502, ERISA does not completely preempt his state action. The relief Wood seeks is irrelevant to a determination of complete preemption. Complete preemption, like ordinary preemption, does not depend on the type of relief requested in a complaint. Complete preemption is an exception to the well-pleaded complaint rule. “[T]he pre-emptive effect of § 502(a) [is] so complete that an ERISA pre-emption defense provides a sufficient basis for removal of a cause of action to the federal forum notwithstanding the traditional limitations imposed by the ‘well-pleaded complaint’ rule.” Ingersoll-Rand,, 498 U.S. at 145, 111 S.Ct. 478 (citing Metropolitan Life, 481 U.S. at 64-67, 107 S.Ct. 1542).
Additionally, a state law claim may fall within Section 502(a) and thus be completely preempted even if the plaintiff asks for relief that is not available under Section 502(a). In Metropolitan Life, the plaintiff sought, inter alia, compensatory damages for mental anguish caused by a denial of benefits. 481 U.S. at 61, 107 S.Ct. 1542. Even though such relief is not available under § 502(a), the Court held that ERISA completely preempted his claim and, thus, removal was proper. Id. at 67, 107 S.Ct. 1542. While the Court considered only Section 501(a)(1)(B), the Court’s language applies broadly to all of Section 502(a). See id. at 66, 107 S.Ct. 1542 (“Congress has clearly manifested an attempt to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court.”)
Similarly, in Ingersoll-Rand, the Court discussed the interaction of Sections 510 and 502(a) in the context of a plaintiffs requested relief. See 498 U.S. at 145, 111 S.Ct. 478. It wrote:
Not only is § 502(a) the exclusive remedy for vindicating § 510-protected rights, but there is no basis in § 502(a)’s language for limiting ERISA actions only to those which seek “pension benefits.” ... Consequently, it is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits.

Id

[5]

In explaining complete preemption in Ingersoll-Rand, the Court applied the ra *679 tionale of ordinary preemption to complete preemption:
“The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.”
Ingersoll-Rand, 498 U.S. at 144, 111 S.Ct. 478 (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (internal citations and quotation marks omitted)). Were we to hold that Wood’s claim is not preempted because he sought remedies not provided for in Section 502(a), we would undermine Congress’ policy choices as reflected in the remedies it set forth in Section 502(a). Given that “Congress viewed [Section 510] as a crucial part of ERISA” Ingersoll-Rand Co., 498 U.S. at 143, 111 S.Ct. 478, we are mindful of these policy choices. Cf. Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 25-26, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (finding state cause of action not completely preempted where “State’s right to enforce its tax levies is not of central concern to” ERISA).
We note that Wood, while seeking money damages for his allegedly improper termination in his state claim, see State Complaint, A-19, seeks equitable damages for the same termination in his federal ERISA claim. See Federal Complaint, A-103. Allowing such parallel claims to be tried in both state and federal courts would undermine Congress’ choice of remedies as reflected in Section 502(a). See, e.g., Engelhardt v. Paul Revere Life Ins., 139 F.3d 1346, 1354, n. 11. (11th Cir.1998) (“Although an ERISA beneficiary cannot obtain punitive damages in an action for benefits, the prayer for punitive damages does not take [plaintiffs] claim out of the scope of [Section 502(a) ]. If it did, any plaintiff could thwart Congress’s intent to completely preempt claims arising out of the denial of ERISA benefits by artful pleading.”) Complete preemption would be an empty doctrine if a plaintiff could plead his way into state court by seeking only money damages. See, e.g., Rice v. Panchal, 65 F.3d 637, 640 (7th Cir.1995) (“[I]f a claim is within § 502(a) then a participant’s ability to recover damages is limited.”)
For these reasons, we find that ERISA preempted Wood’s state claim of discrimination, that we have jurisdiction, and, thus, we affirm the District Court’s denial of remand.

IV. Arbitration

Before turning to the issue whether Wood’s claims are arbitrable, we must consider our jurisdiction over the arbitration issue. We reject Prudential’s contention that we do not have jurisdiction to consider the decision to compel arbitration.
We have held that where a district court’s dismissal of an action signifies that the arbitration is “not a part of any ongoing proceeding,” the court of appeals has jurisdiction from a final order. Nationwide Ins. Co. of Columbus, Ohio v. Patterson, 953 F.2d 44, 46 (3rd Cir.1991). In Nationwide, we reviewed a district court’s decision to dismiss a case on the grounds that the parties were obliged to arbitrate. *680 There, we stated: “[Although the result of the district court’s order is that the parties will arbitrate their dispute, the district court’s dismissal of [the] action plainly signifies that this is not a part of any ongoing proceeding. Therefore, we hold that we have appellate jurisdiction.” Id. In Nationwide, we held the matter a reviewable final order in spite of “the practical effect of the district court’s order ... that the parties will now submit their dispute to arbitration.” Id. at 45.
To distinguish Nationwide, Prudential seeks to make the point that the District Court in this case faced a motion to compel arbitration while the District Court in Nationwide granted a motion to dismiss and made no order to arbitrate. No matter how the motion is drawn, the District Courts’ conclusions were the same: both in Nationwide and in this case, the District Court appropriately dismissed the action upon motion.
We next consider the District Court’s decision to compel arbitration. Our review is plenary. See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3rd Cir.1992). The U.S. Supreme Court has held that:
[A]s a matter of federal law, any doubts concerning the scope of arbitration should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. ■
Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (emphasis added). In order to obtain a finding that arbitration is waived, a party seeking to avoid arbitration must demonstrate prejudice. See Hoxworth, 980 F.2d at 925 (“prejudice is the touchstone for determining whether the right to arbitrate has been waived.”).
Wood argues that Prudential waived its right to arbitrate because, in a joint discovery plan filed June 12, 1988, Prudential “reserve[d] the right to file a motion to compel arbitration on or before August 1, 1998,” and, then, did not act on that intention until September 24, 1998, when it filed its motion to compel arbitration.
We hold that Prudential did not waive its right to arbitrate; the delay was short and Prudential did not engage in significant litigation action that could have caused prejudice to Wood. It delayed seeking arbitration only by one-and-a-half months. Cf. Hoxworth, 980 F.2d at 926 (finding waiver where delay was eleven months). Prudential’s litigation tactics had not been extensive: it had not taken any depositions nor served any discovery demands. Prudential does not appear to have been “able to use the Federal Rules to conduct discovery not available in the arbitration forum.” Hoxworth, 980 F.2d at 926. While Prudential contested the merits of the claims in District Court, this is not enough to overcome the presumption of arbitrability. See Moses H. Cone, 460 U.S. at 24-25, 103 S.Ct. 927.
To establish prejudice, Wood argues that Prudential’s delay put him at a strategic disadvantage. He states that his “counsel made key litigation decisions based upon his belief that Prudential had abandoned its initial intention to seek arbitration of this controversy,” specifically that “counsel would have asked the District Court to withhold any ruling on the defendant’s motion to dismiss.... ” The District Court considered that motion and dismissed the Americans with Disability Act claim but not the ERISA claim. Putting aside whether the District Court would have agreed to a request to withhold such a ruling, we do not understand how Wood could be prejudiced by the Court’s having decided the matter. For this decision to be prejudicial, we would have to presume that an arbitrator would have decided the merits of the claim differently — a presumption we cannot make.
Wood argues that the arbitration agreement does not apply to his claims of defamation and of intentional infliction of emotional distress because they both arose *681 after the termination of his employment. The arbitration agreement applicable to this case is contained in a National Association of Securities Dealers (“NASD”) Uniform Application for Securities Industry Registration (“U-4 Form”) and calls for arbitration of any dispute, claim or controversy between Wood and Prudential “to be arbitrated under the rules ... or by-laws of [the NASD].” A-246. It requires arbitration under the NASD Code of any claim “arising out of the employment or termination of employment of such associated person(s) with such member....” A-254, NASD Manual (CCH) S10201.
Wood’s claim of defamation is based on Prudential’s forwarding of Wood’s termination letter to the New Jersey Department of Insurance. State Complaint ¶¶ 6, 11, A-17, 19. In that letter, Prudential referenced Wood’s alleged violations of company rules. A-23. Since the alleged defamation was a description of Wood’s activities while employed at Prudential and was contained in Wood’s termination letter, we hold that the claim of defamation arose out of his employment and its termination. Thus, Wood’s defamation claim is arbitrable.
Wood’s claim of intentional infliction of emotional distress also arises out of Wood’s employment and its termination. He alleges that Prudential’s actions “were outrageous, by reason of [its] use of false and defamatory allegations of wrongdoing as a pretext for the termination of the plaintiff....” State Complaint ¶ 14, A-20. Again, the claim centers on Wood’s termination and is, thus, covered by the arbitration agreement.
Wood also contends that the arbitration agreement does not apply to his state law discrimination claim because of an amendment to the NASD rules. We disagree. The amendment, effective January 1, 1999, exempts from mandatory arbitration “elaim[s] alleging employment discrimination ... in violation of a statute.” Rule 10201(b) of NASD Code of Arbitration Procedure, A-525. Because the amendment was not effective until January 1, 1999, it did not affect the arbitration agreement between these two parties which requires Wood to comply with arbitration as defined by the NASD Code at the time he filed suit in 1998. See Seus v. John Nuveen & Co.,- Inc., 146 F.3d 175, 187 (3rd Cir.1998) (“[The] Form U-4 compliance clause obligates a registrant to comply with the NASD arbitration code as it existed at the time she filed suit.”).
We hold, thus, that the arbitration agreement applies to Wood’s state law claims of discrimination, defamation, and intentional infliction of emotional distress. Wood does not dispute that the arbitration agreement applies to his other claims. Thus, we affirm the District Court’s ruling to compel arbitration over all the claims in these consolidated cases.

V. Conclusion

We affirm the District Court’s decision to deny remand of Wood’s state suit. We also affirm the District Court’s decision to compel arbitration as to all claims in the consolidated suits.

. New Jersey Law Against Discrimination, NJ.S.A. 10:5-1 etseq.

. New Jersey Constitution of 1947, Art. 1, ¶ 1.

. The parties define these benefits as health and retirement benefits.

.The District Court held that ERISA also completely preempted Wood's claim of discrimination based on the state constitution because that claim was substantially identical to the claim of discrimination based on the state statute. Both holdings are subject to appeal, but Wood has not challenged the Dis *677 trict Court’s holding as to the complete preemption of the claim of discrimination based on the state constitution. Thus, we do not address this holding.

. While this quoted portion of the opinion in Ingersoll-Rand may be dicta, it is still sound analysis. The dissent argues that we should not give Ingersoll-Rand, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474, any weight because the statements on which we rely are dicta. According to the dissent, when the Court stated, "when it is clear or may fairly be *679 assumed, that the activities which a state purports to regulate are protected by § 510 of ERISA, due regard for the federal enactment requires the state jurisdiction to yield,” id. at 145, 111 S.Ct. 478 (emphasis added), this is not a significant statement. We disagree. The Court, even though it did not have to make that statement in the Ingersoll-Rand case, did so, it seems, because it wanted to point out that § 510 does not stand alone and that § 502(a) and § 510 must be read together. It is because of this interaction — an interaction found in the plain words of § 510, see 29 U.S.C. § 1140 — that we find that Wood’s claim is completely preempted. The dissent is reluctant to recognize that interaction.