

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-28-2000

# Wood v Prudential Ins Co

Precedential or Non-Precedential:

Docket 99-5022

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Wood v Prudential Ins Co" (2000). *2000 Decisions.* Paper 69.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/69

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 28, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5022

JAMES W. WOOD

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA

(D.C. Civil No. 98-cv-02383)

JAMES W. WOOD; KAREN WOOD, individually and as
Guardians of MATTHEW WOOD, incompetent

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA

(D.C. Civil No. 98-cv-02487)

James Wood; Karen Wood, individually and as guardians
of Matthew Wood, incompetent

       Appellants

On appeal from Orders entered in the
United States District Court
for the District of New Jersey
(D.C. Civil Action Nos. 98-2383 and
98-2487) (Consolidated Cases)
Chief District Judge: Honorable Anne E. Thompson

Argued: November 16, 1999

Before: ALITO AND STAPLETON, Circuit Judges, and
FEIKENS, District Judge.

(Filed: March 28, 2000)

      G. Martin Meyers (argued)
      Law Offices of G. Martin Meyers,
      P.C.
      35 West Main Street
      Suite 106
      Denville, New Jersey 07834
      Attorney for Appellants

Don A. Innamorato
Stephanie Wilson
Reed Smith Shaw & McClay LLP
136 Main Street, Suite 250
Princeton, New Jersey 08543-7839
 and
David Bennet Ross
Peter A. Walker (argued)
Mara-Louise Anzalone
Seyfarth, Shaw, Fairweather &
Geraldson
1270 Avenue of the Americas
Suite 2500
New York, New York 10020-1801
Attorneys for Appellee

OPINION OF THE COURT

FEIKENS, District Judge:

## I. Background

In 1998, Appellant James Wood ("Wood") filed suit in a New Jersey state court against his former employer, The Prudential Insurance Company of America ("Prudential"). In his complaint, Wood pleaded four counts against Prudential: discrimination based on a New Jersey statute[1];

_____

1. New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

defamation; outrage; and discrimination based on the New Jersey constitution[2]. Wood alleged that Prudential discriminated against him by terminating his employment to avoid paying benefits[3] to him and his dependents. In this state suit, Wood sought, inter alia, compensatory damages, damages for humiliation, pain and suffering, and punitive damages. Prudential removed the suit to the U.S. District Court of New Jersey asserting that the Employee Retirement Insurance Security Act of 1974 ("ERISA"), 29 U.S.C. S 1001 et seq., completely preempted both Wood's claim of discrimination under the state statute and his claim of discrimination under the state constitution. In denying Wood's motion to remand the suit to state court, the United States District Court held that ERISA completely preempted those two claims. The court took supplemental jurisdiction over the claims of defamation and outrage and construed the claim of outrage as a claim of intentional infliction of emotional distress.

Wood and his wife, Karen Wood, individually and on

behalf of their son, Matthew Wood, then filed suit later in 1998 in the U.S. District Court of New Jersey alleging that Prudential's termination of Wood's employment violated ERISA and, since Matthew Wood was disabled, that it violated the Americans with Disabilities Act ("ADA"). For his ERISA claim, Wood sought equitable relief and, for his ADA claim, Wood sought compensatory and other damages. The District Court dismissed the ADA claim, consolidated the two cases, and granted Prudential's motion to submit all claims to arbitration.

II. Issues

Several questions are presented to us on appeal:

> 1) Is complete preemption of a state claim that is subject to Section 510 of ERISA warranted even if the state claim prays for relief arguably not provided for in Section 502(a) of ERISA?

_____

2. New Jersey Constitution of 1947, Art. 1, P 1.

3. The parties define these benefits as health and retirement benefits.

3

> 2) Assuming that complete preemption applies, may the District Court compel arbitration of his claims under the facts of this case?

> 3) In order to rule on these questions, did the District Court, and do we, have jurisdiction?

III. Complete Preemption

A.

The District Court denied Wood's motion to remand holding that ERISA completely preempted Wood's claim of discrimination based on the state statute. The District Court read that claim as an assertion "that depriving him of his retirement benefits was the motivating purpose for, and not merely a consequence of, his termination." We agree with this reading.4

In his state complaint, Woods alleges generally that:

> [T]he real reason that . . . Prudential terminated [his] employment . . . was its knowledge that, because he was fifty-one years old, and had more than twenty years of service with Prudential, plaintiff Jim Wood was about to become eligible for full retirement benefits.

Defendant Prudential knew that the vesting of those benefits would require it to continue to be responsible for the medical expenses of the plaintiff and of his dependents, including the plaintiff's son, Matthew Wood.

State Complaint P4, A-16. He repeats this general allegation in each of his four state law claims. State Complaint PP 7, 10, 13, 16, A-19-21. Since Wood's son suffers from severe head injuries due to a car accident, Wood alleges that the

_____

4. The District Court held that ERISA also completely preempted Wood's claim of discrimination based on the state constitution because that claim was substantially identical to the claim of discrimination based on the state statute. Both holdings are subject to appeal, but Wood has not challenged the District Court's holding as to the complete preemption of the claim of discrimination based on the state constitution. Thus, we do not address this holding.

4

medical bills for his son run into the "millions of dollars." State Complaint P 5, A-17.

Wood argues that his complaint contains claims of age and disability discrimination entirely separate from this benefits-defeating allegation. But, we find nothing in his complaint other than an allegation that Prudential terminated Wood's employment to avoid paying health and retirement benefits.

Wood argues that his complaint alleges discrimination based on age because it referred directly to his age. The relevant portion of the allegation reads: "[B]ecause he was fifty-one years old, and had more than twenty years of service with Prudential, plaintiff Jim Wood was about to become eligible for full retirement benefits." State Complaint P 4, A-16. It seems obvious that Wood's reference to age, like the accompanying reference to his length of service, establishes the allegation that Wood was "about to become eligible for full retirement benefits." His age is relevant only insofar as it affected his eligibility for benefits. We agree with the District Court when it noted: "Aside from nearing early retirement age, there are no facts alleged in the Complaint to support a claim that Wood's age had any bearing on Prudential's decision to terminate him."

Wood also argues that his state court complaint alleges discrimination based on the disability of Wood's son. His complaint mentions the disability of his son only in the context of Prudential's potential obligation for the high medical expenses of his son. Since Wood's state

discrimination claim provides no rationale for Prudential's treatment other than to avoid paying benefits to him and to his dependents, we read the complaint as alleging that Prudential's termination of Wood's employment had a benefits-defeating motive.

B.

A claim of discharge based on a "benefits-defeating" motive comes under Section 510 of ERISA. That section prohibits the "discharge of a participant or beneficiary for the purpose of interfering with the attainment of any right to which such participant may become entitled."S 510, 29

5

U.S.C. S 1140. "Congress enacted this section to prevent unscrupulous employers from discharging or harassing their employees in order to prevent them from obtaining their statutory or plan-based rights." Zipf v. American Telephone and Telegraph Co., 799 F.2d 889, 891 (3rd Cir. 1986); see, also, Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143 (1990).

Section 510 of ERISA does not stand alone; by its terms it gains its enforcement vitality from Section 502. Section 510 provides: "The provisions of [section 502] of this title shall be applicable in the enforcement of this section." S 510, 29 U.S.C. S 1140. Thus, any state claim that falls within Section 510 is necessarily within Section 502.

C.

Federal courts have jurisdiction over claims "arising under the Constitution, law or treaties of the United States." 28 U.S.C. S 1331. Under the well-pleaded complaint rule, a court determines whether a claim"arises under" federal law from a plaintiff's complaint. Metropolitan Life v. Taylor, 481 U.S. 58, 62 (1987) ("It is long-settled law that a cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law."). A plaintiff is, thus, considered the"master of the complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 398-99 (1987).

The United States Supreme Court has recognized the doctrine of complete preemption as a corollary or an exception to the "well-pleaded complaint" rule. Metropolitan Life, 481 U.S. at 63-64. Under this complete preemption exception, the Court has held that "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. Since ERISA Section 502(a)

completely preempts a state claim, removal of Wood's state claim to federal jurisdiction is proper. See id. at 66 ("Congress has clearly manifested an intent to make causes of action within the scope of 502(a) removable to federal court."); Joyce v. RJR Nabisco Holdings Corp. , 126 F.3d 166, 172 (3rd Cir. 1997).

We reject Wood's contention that, because none of the relief he requested in his state claim is available under Section 502, ERISA does not completely preempt his state action. The relief Wood seeks is irrelevant to a determination of complete preemption. Complete

preemption, like ordinary preemption, does not depend on the type of relief requested in a complaint. Complete preemption is an exception to the well-pleaded complaint rule. "[T]he pre-emptive effect of S 502(a) [is] so complete that an ERISA pre-emption defense provides a sufficient basis for removal of a cause of action to the federal forum notwithstanding the traditional limitations imposed by the "well-pleaded complaint" rule." Ingersoll-Rand, 498 U.S. at 145 (citing Metropolitan Life, 481 U.S. at 64-67).

Additionally, a state law claim may fall within Section 502(a) and thus be completely preempted even if the plaintiff asks for relief that is not available under Section 502(a). In Metropolitan Life, the plaintiff sought, inter alia, compensatory damages for mental anguish caused by a denial of benefits. 481 U.S. at 61. Even though such relief is not available under S 502(a), the Court held that ERISA completely preempted his claim and, thus, removal was proper. Id. at 67. While the Court considered only Section 501(a)(1)(B), the Court's language applies broadly to all of Section 502(a). See id. at 66 ("Congress has clearly manifested an attempt to make causes of action within the scope of the civil enforcement provisions of S 502(a) removable to federal court.")

Similarly, in Ingersoll-Rand, the Court discussed the interaction of Sections 510 and 502(a) in the context of a plaintiff's requested relief. See 498 U.S. at 145. It wrote:

> Not only is S 502(a) the exclusive remedy for vindicating S 510-protected rights, but there is no basis in S 502(a)'s language for limiting ERISA actions only to those which seek "pension benefits." . . . Consequently, it is no answer to a pre-emption argument that a particular plaintiff is not seeking recovery of pension benefits.

Id.5

In explaining complete preemption in Ingersoll-Rand, the Court applied the rationale of ordinary preemption to complete preemption:

> "The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in S 502(a) of the statute asfinally enacted . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."

Ingersoll-Rand, 498 U.S. at 144 (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54 (1987) (internal citations and quotation marks omitted)). Were we to hold that Wood's claim is not preempted because he sought remedies not provided for in Section 502(a), we would undermine Congress' policy choices as reflected in the remedies it set forth in Section 502(a). Given that "Congress viewed [Section 510] as a crucial part of ERISA" Ingersoll-Rand Co., 498 U.S. at 143, we are mindful of these policy choices. Cf. Franchise Tax Board v. Construction La borers Vacation Trust, 463 U.S. 1, 25-26 (1983) (finding state cause of

_____

5. While this quoted portion of the opinion in Ingersoll-Rand may be dicta, it is still sound analysis. The dissent argues that we should not give Ingersoll-Rand, 498 U.S. 133, any weight because the statements on which we rely are dicta. According to the dissent, when the Court stated, "when it is clear or may fairly be assumed  that the activities which a state purports to regulate are protected by S 510 of ERISA, due regard for the federal enactment requires the state jurisdiction to yield," id. at

145 (emphasis added), this is not a significant statement. We disagree. The Court, even though it did not have to make that statement in the Ingersoll-Rand case, did so, it seems, because it wanted to point out that S 510 does not stand alone and that S 502(a) and S 510 must be read together. It is because of this interaction -- an interaction found in the plain words of S 510, see 29 U.S.C.S 1140 -- that we find that Wood's claim is completely preempted. The dissent is reluctant to recognize that interaction.

action not completely preempted where "State's right to

enforce its tax levies is not of central concern to" ERISA).

We note that Wood, while seeking money damages for his allegedly improper termination in his state claim, see State Complaint, A-19, seeks equitable damages for the same termination in his federal ERISA claim. See Federal Complaint, A-103. Allowing such parallel claims to be tried in both state and federal courts would undermine Congress' choice of remedies as reflected in Section 502(a). See, e.g., Engelhardt v. Paul Revere Life Ins., 139 F.3d 1346, 1354, n.11. (11th Cir. 1998) ("Although an ERISA beneficiary cannot obtain punitive damages in an action for benefits, the prayer for punitive damages does not take [plaintiff's] claim out of the scope of [Section 502(a)]. If it did, any plaintiff could thwart Congress's intent to completely preempt claims arising out of the denial of ERISA benefits by artful pleading.") Complete preemption would be an empty doctrine if a plaintiff could plead his way into state court by seeking only money damages. See, e.g., Rice v. Panchal, 65 F.3d 637, 640 (7th Cir. 1995) ("[I]f a claim is within S 502(a) then a participant's ability to recover damages is limited.")

For these reasons, we find that ERISA preempted Wood's state claim of discrimination, that we have jurisdiction, and, thus, we affirm the District Court's denial of remand.

IV. Arbitration

Before turning to the issue whether Wood's claims are arbitrable, we must consider our jurisdiction over the arbitration issue. We reject Prudential's contention that we do not have jurisdiction to consider the decision to compel arbitration.

We have held that where a district court's dismissal of an action signifies that the arbitration is "not a part of any ongoing proceeding," the court of appeals has jurisdiction from a final order. Nationwide Ins. Co. of Columbus, Ohio v. Patterson, 953 F.2d 44, 46 (3rd Cir. 1991). In Nationwide, we reviewed a district court's decision to dismiss a case on the grounds that the parties were obliged to arbitrate. There, we stated: "[A]lthough the result of the district

court's order is that the parties will arbitrate their dispute, the district court's dismissal of [the] action plainly signifies that this is not a part of any ongoing proceeding. Therefore, we hold that we have appellate jurisdiction." Id. In Nationwide, we held the matter a reviewablefinal order in spite of "the practical effect of the district court's order . . . that the parties will now submit their dispute to

arbitration." Id. at 45.

To distinguish Nationwide, Prudential seeks to make the point that the District Court in this case faced a motion to compel arbitration while the District Court in Nationwide granted a motion to dismiss and made no order to arbitrate. No matter how the motion is drawn, the District Courts' conclusions were the same: both in Nationwide and in this case, the District Court appropriately dismissed the action upon motion.

We next consider the District Court's decision to compel arbitration. Our review is plenary. See Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 925 (3rd Cir. 1992). The U.S. Supreme Court has held that:

> [A]s a matter of federal law, any doubts concerning the scope of arbitration should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (emphasis added). In order to obtain a finding that arbitration is waived, a party seeking to avoid arbitration must demonstrate prejudice. See Hoxworth, 980 F.2d at 925 ("prejudice is the touchstone for determining whether the right to arbitrate has been waived.").

Wood argues that Prudential waived its right to arbitrate because, in a joint discovery plan filed June 12, 1988, Prudential "reserve[d] the right to file a motion to compel arbitration on or before August 1, 1998," and, then, did not act on that intention until September 24, 1998, when it filed its motion to compel arbitration.

We hold that Prudential did not waive its right to arbitrate; the delay was short and Prudential did not engage in significant litigation action that could have caused prejudice to Wood. It delayed seeking arbitration only by one-and-a-half months. Cf. Hoxworth, 980 F.2d at 926 (finding waiver where delay was eleven months). Prudential's litigation tactics had not been extensive: it had not taken any depositions nor served any discovery demands. Prudential does not appear to have been "able to use the Federal Rules to conduct discovery not available in the arbitration forum." Hoxworth, 980 F.2d at 926. While Prudential contested the merits of the claims in District Court, this is not enough to overcome the presumption of

arbitrability. See Moses H. Cohn, 460 U.S. at 24-25.

To establish prejudice, Wood argues that Prudential's delay put him at a strategic disadvantage. He states that his "counsel made key litigation decisions based upon his belief that Prudential had abandoned its initial intention to seek arbitration of this controversy," specifically that "counsel would have asked the District Court to withhold any ruling on the defendant's motion to dismiss. . .." The District Court considered that motion and dismissed the Americans with Disability Act claim but not the ERISA claim. Putting aside whether the District Court would have agreed to a request to withhold such a ruling, we do not understand how Wood could be prejudiced by the Court's having decided the matter. For this decision to be prejudicial, we would have to presume that an arbitrator would have decided the merits of the claim differently -- a presumption we cannot make.

Wood argues that the arbitration agreement does not apply to his claims of defamation and of intentional infliction of emotional distress because they both arose after the termination of his employment. The arbitration agreement applicable to this case is contained in a National Association of Securities Dealers ("NASD") Uniform Application for Securities Industry Registration ("U-4 Form") and calls for arbitration of any dispute, claim or controversy between Wood and Prudential "to be arbitrated under the rules . . . or by-laws of [the NASD]." A-246. It requires arbitration under the NASD Code of any claim

11

"arising out of the employment or termination of employment of such associated person(s) with such

member. . . ." A-254, NASD Manual (CCH) S10201.

Wood's claim of defamation is based on Prudential's forwarding of Wood's termination letter to the New Jersey Department of Insurance. State Complaint PP 6, 11, A-17, 19. In that letter, Prudential referenced Wood's alleged violations of company rules. A-23. Since the alleged defamation was a description of Wood's activities while employed at Prudential and was contained in Wood's termination letter, we hold that the claim of defamation arose out of his employment and its termination. Thus, Wood's defamation claim is arbitrable.

Wood's claim of intentional infliction of emotional distress also arises out of Wood's employment and its termination. He alleges that Prudential's actions "were outrageous, by reason of [its] use of false and defamatory allegations of

wrongdoing as a pretext for the termination of the plaintiff. . . ." State Complaint P 14, A-20. Again, the claim centers on Wood's termination and is, thus, covered by the arbitration agreement.

Wood also contends that the arbitration agreement does not apply to his state law discrimination claim because of an amendment to the NASD rules. We disagree. The amendment, effective January 1, 1999, exempts from mandatory arbitration "claim[s] alleging employment discrimination . . . in violation of a statute." Rule 10201(b) of NASD Code of Arbitration Procedure, A-525. Because the amendment was not effective until January 1, 1999, it did not affect the arbitration agreement between these two parties which requires Wood to comply with arbitration as defined by the NASD Code at the time he filed suit in 1998. See Seus v. John Nuveen & Co., Inc., 146 F.3d 175, 187 (3rd Cir. 1998) ("[The] Form U-4 compliance clause obligates a registrant to comply with the NASD arbitration code as it existed at the time she filed suit.").

We hold, thus, that the arbitration agreement applies to Wood's state law claims of discrimination, defamation, and intentional infliction of emotional distress. Wood does not dispute that the arbitration agreement applies to his other

12

claims. Thus, we affirm the District Court's ruling to compel arbitration over all the claims in these consolidated cases.

V. Conclusion

We affirm the District Court's decision to deny remand of Wood's state suit. We also affirm the District Court's decision to compel arbitration as to all claims in the consolidated suits.

13

Stapleton, J., dissenting:

Because I conclude that the District Court lacked jurisdiction, I respectfully dissent.

I.

Generally, "the `well-pleaded complaint rule' requires that, for removal to be appropriate, a federal question must appear on the face of the complaint." Joyce v. RJR Nabisco Holdings Corp., 126 F.3d 166, 171 (3d Cir. 1997). "Under a

narrow exception to the well-pleaded complaint rule, however, Congress may `completely preempt' a particular area of law such that any claim that falls within this area is `necessarily federal in character.' " Id. "Complete preemption" must be distinguished from "ordinary preemption." Complete preemption is a jurisdictional doctrine, whereas ordinary preemption is merely a federal defense that does not create removal jurisdiction. See id.

Absent diversity or some other independent basis for federal jurisdiction, a federal court has no jurisdiction to entertain a complaint removed from a state court that relies on state law ordinarily preempted by ERISA. Cf. Caterpillar Inc. v. Williams, 482 U.S. 386, 398 (1987) ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court."); Goepel v. National Postal Mail Handlers Union, 36 F.3d 306, 316 (3d Cir. 1994) (" `State courts are competent to determine whether state law has been preempted by federal law,' and, absent complete preemption, `they must be permitted to perform that function' with regard to state law claims brought before them."). As a result, such a complaint, if removed, must be returned to state court. The defendant's remedy is to seek dismissal or summary judgment in the state court on the grounds of preemption.

If a claim based on state law is completely preempted, however, it is treated as a federal claim; a district court has federal question removal jurisdiction to entertain it, and the claim, after removal, should go forward in the district court as a federal claim. See International Brotherhood of Elec. Workers, 481 U.S. 851, 862-63 (1987) (afterfinding

14

complete preemption, considering the merits of plaintiff's suit "treated as a S 301 claim"); Antol v. Esposto, 100 F.3d 1111, 1114-15 (3d Cir. 1997) (after determining that it had complete preemption removal jurisdiction, district court adjudicated claim on the merits); see also Pilot Life Ins. v. Dedeaux, 481 U.S. 41, 56 (1987) (complete preemption results from Congress' intent that suits "be treated as federal questions governed by S 502(a)"); Charles Alan Wright et al., Federal Practice and Procedure  S 3722.1, at 511 (3d ed. 1998) (explaining that complete preemption substitutes a federal cause of action for the preempted state cause of action).

Section 514(a) of ERISA broadly preempts "any and all State laws insofar as they relate to any employee benefit plan," but this is ordinary preemption only, and does not create federal removal jurisdiction. Joyce, 126 F.3d at 171

(quoting 29 U.S.C. S 1144(a)). "Only state claims that come within ERISA's civil enforcement provisions in S 502(a) are completely preempted such that removal to federal court is appropriate." Id. State causes of action for wrongful discharge motivated by the desire to prevent a pension from vesting fall squarely within the ambit of S 510 and are ordinarily preempted by ERISA. See Ingersoll-Rand, 498 U.S. at 140, 142-45. Ordinary preemption under ERISA, without more, however, does not convert a state claim into one that is necessarily federal for jurisdictional purposes. See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64 (1987).

In Metropolitan Life, the Court did find that the civil enforcement provision in S 502(a)(1)(B) has complete preemptive power, but in doing so, it stated that:

> [e]ven with a provision such as S 502(a)(1)(B) that lies at the heart of a statute with the unique preemptive force of ERISA, however, we would be reluctant tofind that extraordinary preemptive power, such as has been found with respect to S 301 of the LMRA, that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.

Id. at 65. The Court based its finding of complete preemption on strong evidence of Congressional intent, not

15

merely to preempt state law, but to invoke the jurisdictional doctrine of complete preemption. In particular, the Court relied on the fact that "the language of the jurisdictional subsection of ERISA's civil enforcement provisions closely parallels that of S 301 of the LMRA," which the Court had already interpreted as giving rise to complete preemption at the time that ERISA was drafted. Id. (citing 29 U.S.C. S 1132(f) and 29 U.S.C. S 185(a)). The Court also noted legislative history stating that:

> [w]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan . .. they may be brought not only in U.S. district courts but also in state courts of competent jurisdiction. All such actions . . . are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor-Management Relations Act of 1947.

Id. at 65-66 (quoting H.R. Conf. Rep. No. 93-1280, p. 327 (1974)). The Court concluded that "[n]o more specific reference to the Avco rule can be expected and the rest of

the legislative history consistently sets out this clear intention to make S 502(a)(1)(B) suits . . . federal questions for the purposes of federal court jurisdiction in like manner as S 301 of the LMRA." Id. at 66.

A similar analysis leads to the conclusion thatS 510 standing alone does not have the "extraordinary" preemptive power that converts a state law claim into a federal one for jurisdictional purposes, and that therefore claims that seek impermissible relief for a pension-defeating termination and thus fall within S 510 but notS 502(a) are not removable. The scope of the jurisdictional subsection on which Metropolitan Life relied for itsfinding of complete preemption is expressly defined in terms of the relief sought, rather than the nature of the cause of action. See 29 U.S.C. S 1132(f) ("The district courts .. . shall have jurisdiction . . . to grant the relief provided for in subsection (a) of this section in any action.). Moreover, the House Report cited by Metropolitan Life expressly invokes the doctrine of complete preemption twice: "[w]ith respect to suits to enforce benefit rights under the plan or to recover benefits under the plan," H.R. Conf. Rep. No. 93-1280,

16

1974 U.S.C.C.A.N. 5038, 1974 WL 11542, at 166, and "suit[s] to recover benefits denied contrary to the terms of [the] plan," id. at 356-57. No such express reference to complete preemption appears in the discussion of the protection against pension-defeating discharge. See id. at 357. Thus neither the statute nor the legislative history provide any evidence of Congressional intent to expand the scope of ERISA's complete preemptive power beyond those actions that fall within the civil enforcement provisions of S 502(a) to actions under S 510 that seek impermissible relief.

This Court's precedent also supports the conclusion that claims seeking legal relief for violations of S 510 are only ordinarily preempted, and that federal jurisdiction is thus improper. This Court has recognized two prerequisites for a finding of complete preemption. "[C]omplete preemption applies only if `the statute relied upon by the defendant as preemptive contains civil enforcement provisions within the scope of which plaintiff's state claim falls," and there must also be a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." Goepel v. National Postal Mail Handlers Union, 36 F.3d 306, 311 (3d Cir. 1994). Although ERISA provides a civil enforcement provision for violations ofS 510, if Wood's claims do not seek equitable relief, they do not fall "within the scope" of that provision. Furthermore, although there is clear evidence of Congressional intent to permit

removal of actions within the scope of the civil enforcement provisions, which actions necessarily are potentially viable federal actions, there is no indication of Congressional intent to permit removal of actions that seek impermissible remedies and thus cannot be viable and must be dismissed.

The Supreme Court's dicta in Ingersoll-Rand does not require a different result. Although Ingersoll-Rand was a case of ordinary preemption,1 after determining that S 502(a) provides the exclusive remedy for violations of S 510 the Court stated that " `when it is clear or may fairly

_____

1. The case had been decided in Texas state courts, and thus federal jurisdiction was not at issue. See Ingersoll-Rand, 498 U.S. at 481.

17

be assumed that the activities which a State purports to regulate are protected' by S 510 of ERISA,`due regard for the federal enactment requires that state jurisdiction must yield.' " Id. (quoting Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 409 n.8 (1988) (a case of ordinary, rather than complete preemption)). Although the majority reads this statement as suggesting that S 510 itself has complete preemptive effect, to be consistent with Metropolitan Life this statement must be read in context, which is that Ingersoll-Rand was a case of ordinary preemption in which federal jurisdiction was not at issue. This context suggests that it is not state court jurisdiction that must yield when regulated activities fall within S 510, but rather the State's jurisdiction to regulate such activities, that is, mere ordinary preemption. Indeed, the dicta at issue immediately follows and supports the Court's holding that "the requirements of conflict pre-emption are satisfied in this case." Id.

Contrary to the majority's assertion, Metropolitan Life does not stand for the proposition that state law claims may fall within S 502(a) and be completely preempted even if the plaintiff asks only for relief that is not available under S 502(a). While it is true that the plaintiff there claimed "compensation for mental anguish caused by breach of . . . contract" he also claimed "reimplementation of all benefits," the paradigm of S 502(a) relief. Metropolitan Life Ins. Co., 481 U.S. at 61. Accordingly, as the Court expressly pointed out, "General Motors and Metropolitan removed to federal court alleging federal question jurisdiction over the disability benefit claim by virtue of ERISA and pendant jurisdiction over the remaining claims." Id. Thus, it was the claim for reinstatement of benefits that gave the Court jurisdiction to consider whether the state law claims

seeking impermissible remedies were ordinarily preempted by ERISA.

The fact that the plaintiff seeks remedies in his state cause of action that are unavailable under the federal cause of action clearly does not preclude a finding of ordinary preemption; indeed, ordinary preemption of inconsistent state remedies is the very purpose of the ERISA's limited civil actions provision and its broad ordinary preemption

provision. See Pilot Life Ins. Co. v. Dedeaux , 481 U.S. 41, 51-54 (1987) ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA."). Ordinary preemption, however, is for state courts to determine.

II.

Given that S 510 does not by itself have complete preemptive effect, it becomes necessary to determine whether Wood's claims fall within the civil enforcement provisions of S 502(a). Section 502(a) provides that:

> A civil action may be brought--
>
> (1) by a participant or beneficiary--
>
>   . . .
>
>    (B) to recover benefits due to him under the terms of his plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
>
>   . . .
>
>    (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

29 U.S.C. 1132(a).

Section 510 of ERISA prohibits employers from discharging employees for the purpose of preventing a

pension from vesting. See Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143 (1990). Section 510 provides that:

> It shall be unlawful for any person to discharge . .. a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which

19

> such participant may become entitled under the plan . . . . . The provisions of section 1132 of this title[S 502 of ERISA] shall be applicable in the enforcement of this section.

29 U.S.C. 1140. Claims under S 510 are enforced under S 502(a)(3). See Zipf v. American Tel. & Tel. Co., 799 F.2d 889, 891 (3d Cir. 1986); see also Ingersoll Rand , 498 U.S. at 143-44 (quoting only S 502(a)(3) and then stating that S 502(a) provides the remedy for violations ofS 510). Since this is not a suit to recover benefits or to enforce rights under a plan, the only potential avenue for finding Wood's state law claims are completely preempted is if they are claims under S 502(a)(3) to obtain "appropriate equitable relief to redress [a] violation[ ] of[S 510]." 29 U.S.C. 1132(a)(3).

In the instant case, it may well be that Wood's state causes of action include a claim that falls within the ambit of S 510, in that they assert that Wood's discharge was motivated by a desire to prevent his pension from vesting. I would conclude, however, that any such claim does not fall within S 502(a)(3), which reaches only claims for equitable relief. See 29 U.S.C. 1132(a)(3); Mertens v. Hewitt Assocs., 508 U.S. 248, 255-62 (1993) (holding that compensatory damages are unavailable under S 502(a)(3), which provides for equitable relief only); In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 57 F.3d 1255, 1268-69 (3d Cir. 1995); Spinelli v. Gaughan, 12 F.3d 853, 857 (9th Cir. 1993) (recognizing that Mertens' holding that damages are not available under S 502(a)(3) applies toS 510 claims).

Wood seeks solely money damages. To the extent that his claim falls within the scope of S 510, the damages claimed are to compensate him for injuries inflicted by tortious behavior -- i.e., interference with a relationship that would ultimately have brought him pension benefits from a third party, the ERISA plan. Wood's claim cannot be characterized as an equitable one for restitution because the money sought is not being wrongfully held by the employer. Nor can the damages sought accurately be characterized as incidental to or intertwined with injunctive relief (and thus equitable in nature) because no equitable relief is sought. Finally, a monetary award here cannot be

viewed as an alternative to the equitable remedy of reinstatement (by analogy to a Title VII front pay award) both because Wood does not allege that reinstatement is unfeasible and, more importantly, because reinstatement would not result in his receiving pension benefits from the employer. What we have here, plain and simple, is a tort action seeking compensatory damages for interference with advantageous relations, and Wood is accordingly not seeking an equitable remedy. Case law from our court and the Supreme Court dictates, in my judgment, that we so hold.

In Teamsters v. Terry, 494 U.S. 558 (1990), union members sought damages against the union for breach of the duty of fair representation. The union insisted that the plaintiffs were seeking an equitable remedy and that they were not entitled to a jury trial. The Court concluded to the contrary, observing:

> [B]ecause we conclude that the remedy respondents seek has none of the attributes that must be present before we will find an exception to the general rule and characterize damages as equitable, we find that the remedy sought by respondents is legal.
>
> First, we have characterized damages as equitable where they are restitutionary, such as in "action[s] for disgorgement of improper profits," Tull, 481 U.S., at 424. See also Curtis v. Loether, supra , at 197; Porter v. Warner Holding Co., 328 U.S. 395, 402 (1946). The backpay sought by respondents is not money wrongfully held by the Union, but wages and benefits they would have received from McLean [, the employer,] had the Union processed the employees' grievances properly. Such relief is not restitutionary.
>
> Second, a monetary award "incidental to or intertwined with injunctive relief may be equitable. Tull, supra, at 424. See, e.g., Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 291–292 (1960) (District Court had power, incident to its injunctive powers, to award backpay in that case was restitutionary). Because respondents seek only money damages, this characteristic is clearly absent from the case.

Teamsters, 494 U.S. at 570–71.

The Terry Court distinguished on a number of grounds the Title VII cases that characterize backpay awards as a form of "equitable relief." First, the Court pointed out that Congress had specifically characterized backpay under Title VII as "equitable relief." Id. at 572. Second, and most important for present purposes, the Court noted that "backpay sought from an employer under Title VII would generally be restitutionary in nature . . ., in contrast to the damages sought here from the Union" to compensate for income the plaintiff would have received from the employer had there been no breach of the duty of fair representation. Id.; see also Woodell v. International Bd. of Elec. Workers, 502 U.S. 93, 97–98 (1981) (holding in a suit by a union member against his union for discrimination in job referrals in the operation of its hiring hall that a "claim for lost wages cannot be treated as restitutionary . . . as the damages sought are for pay for jobs to which the union failed to refer him").

This Court followed a similar line of reasoning in Richel v. Commissioner, 900 F.2d 655, 664, n.16 (3d Cir. 1990), where we explained that a restitutionary award representing wages earned but not paid is to be distinguished from an award compensating for the inability to earn an income from another source due to tortious interference.

There is one Third Circuit case that recognizes the availability of front pay in a Title VII case as "an alternative to the traditional remedy of reinstatement" prior to the statutory amendment that made damages available under Title VII. See Goss v. Exxon Office Systems Co., 747 F.2d 885 (3d Cir. 1984). Goss does not help Wood, however. As Goss and the ADEA cases (the ADEA has always authorized legal and equitable remedies) recognize, a front pay remedy is available only where reinstatement is not an available remedy. See, e.g., Maxfield v. Sinclair Intern., 766 F.2d 788 (3d Cir. 1985). Moreover, unlike front pay, recovery on the claim here asserted would not be a substitute for a reinstatement remedy since reinstatement would not call for the defendant to pay Woods' pension benefits.

22

Based on the foregoing, I conclude that the District Court had no jurisdiction over the claims made in the state complaint and should have remanded those claims to the state court, where Prudential may raise its preemption defense.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

23