**Michael GRAF, Plaintiff,**

v.

**DAIMLERCHRSYLER CORP., Defendant.**

**No. 01–71281.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 19, 2002.

Gary S. Fields, Todd A. Schill, Eisenberg & Fields, Southfield, MI, for Plaintiff.

Mark W. McInerney, Lira A. Johnson, Clark Hill, Detroit, MI, for Defendant.

## *OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

BORMAN, District Judge.

Before the Court is Defendant Daimler-Chrysler's motion for summary judgment (Docket Entry # 8). The Court heard oral argument on this motion on February 13, 2002. Upon consideration of the motion, the submissions of the parties, and the applicable law, the Court will GRANT Defendant's motion.

## *I. BACKGROUND*

This case is an employment dispute between Plaintiff, Michael Graf, and Defendant DaimlerChrysler Corp. Plaintiff is a Michigan resident; Defendant is a Michigan corporation.[1] Plaintiff began working at DaimlerChrysler in 1980. At the time of his discharge in 2000, he was employed as a software systems specialist.

DaimlerChrysler provides its employees with various employee benefits, including what it terms "disability absence benefits." (*See* Exh. B to Def.'s MSJ.) Upon proof of total disability, an employee would be eligible to receive disability benefits. (*See* Exh. B to Def.'s MSJ, at § 5.06, page 10.) The plan gives the plan administrator (in this case, CIGNA) "absolute discretion ... to determine eligibility" for benefits. (*See* Exh. B to Def.'s MSJ, at § 7.02, page 11.)

Plaintiff alleges that he began receiving disability benefits in May of 1997, due to his recurrent depression, and such benefits were received "periodically for extended periods of time" from that date until January 12, 2000. Plaintiff alleges that Defendant terminated his benefits on January 12, 2000, due to Defendant's reliance on an independent medical examination ("IME") conducted by Dr. Norman Samet, on January 12, 2000. Plaintiff alleges that "despite Defendant's IME, Plaintiff's treating doctor believed Plaintiff to still be completely disabled from returning to work." (Compl. at ¶¶ 9–14.)

Plaintiff alleges that Defendant sent him a letter dated February 16, 2000, informing him that he should return to work on February 18, 2000 with "medical documentation substantiating [his] continued disability, or ... respond to th[e] letter within seven (7) calendar days." (Feb. 16, 2000

---

1. Thus, there is no diversity jurisdiction, and unless there is a federal question present, this Court lacks subject matter jurisdiction.

letter from Patricia Krohn (Def.'s HR Dept.) to Plaintiff, attached as Exh. E to Pl.'s Response to Def.'s MSJ.) The consequence of not complying with the letter would be termination. (*Id.*) Plaintiff sent a return letter, the body of which reads, in its entirety:

I received your letter about potential termination of employment on Friday, February 18, 2000.

This is to advise you that I am still under the care of my doctor and am experiencing medical problems that prohibit me from returning to work at this time. I have been wrongfully denied my disability benefits and need to have them reinstated.

(Feb. 21, 2000 letter from Plaintiff to Def.'s HR Dept. (Ms. Krohn), attached as Exh. F to Pl.'s Resp.) Plaintiff did not submit any "medical documentation substantiating his continued disability." [2]

Thereafter, Defendant sent Plaintiff two more letters; one, dated February 24, 2000, acknowledging his letter of February 21, 2000, but pointing out that no medical documentation was received, and another, dated March 7, 2000, notifying Plaintiff that since he had failed to comply with Defendant's request for additional medical documentation, his employment was terminated as of February 23, 2000. (Exhs. G & H, attached to Pl.'s Resp.)

On February 26, 2001 Plaintiff filed a Complaint (dated February 23, 2001) in Oakland County Circuit Court. His complaint alleged three state common law causes of action: wrongful termination, retaliation, and intentional infliction of emotional distress. Defendant was served with the summons and complaint on March 8, 2000, and timely filed its notice of removal on April 2, 2000. Defendant's basis for removal was that Plaintiff's claims were completely preempted by ERISA.

On November 13, 2001, Defendant filed the instant motion for summary judgment.

## II. ANALYSIS

### A. Summary Judgment Standard

This Court grants summary judgment when "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is proper when "a party ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d

---

**2.** Plaintiff also attaches to his Response (Exh. D) a letter from CIGNA (Defendant's disability plan administrator). The letter itself is undated, although there is a notation at the top "Date of Exam 1/12/00." The letter states that if Plaintiff disagrees with the review (i.e., the IME), "[a] request for review *must be made to CIGNA* ... within 60 days following the receipt of this letter." (Exh. D, emphasis added.) Plaintiff is unsure whether he ever received this letter. (Pl.'s Dep. At 54–55, attached as Exh. G to Def.'s MSJ.)

Attached to Plaintiff's Response at Exh. I is a letter from Dr. Roger Chan (Plaintiff's treating doctor at the time) dated April 20, 2000, addressed to Plaintiff's counsel, Mr. Todd Schill. Dr. Chan's letter opines that Plaintiff "continues to be disabled for an indefinite period."

It is unclear whether this letter was ever forwarded to Defendant, or to CIGNA.

538 (1986). However, "the mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient to show a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. ERISA Analysis

#### 1. Preemption versus Complete Preemption

The Employee Retirement Income Security Act ("ERISA") is a comprehensive federal law regulating employee benefits. Employee welfare benefit plans are governed by ERISA, and any state law "relat[ing] to" that plan is preempted. 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56–57, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Congress intended the clause to be broadly-interpreted. *Id.*

However, as the Sixth Circuit has recently explained:

> preemption and complete preemption are distinguishable concepts. Simply because a claim is preempted by ERISA does not mean it is automatically removable.... "ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law." A state claim may be preempted by ERISA; however, it is not removable unless it is completely preempted by ERISA.

*See Wright v. General Motors Corp.*, 262 F.3d 610, 614 (6th Cir.2001) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)); *see also Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir.1995) (holding removal and preemption are distinct

concepts; ERISA preemption does not allow removal unless complete preemption exists). The reasoning behind this is that, generally, the well-pleaded complaint rule prevents a case from being removed if a federal cause of action is not apparent on the face of the complaint. However, there is an exception to this general rule: if "Congress ... so complete preempt[s] a particular area[, then] any civil complaint raising this select group of claims is necessarily federal in character" and thus, removable. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). The Supreme Court has explicitly held that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court," i.e., complete preemption exists. *Id.* at 66, 107 S.Ct. 1542.

In *Wright, supra,* the plaintiff alleged state law race and sex discrimination claims for her termination; she filed her complaint in state court, and the defendant removed, claiming complete preemption. There was no diversity jurisdiction present. The Sixth Circuit made it clear:

> The significance of the preemption issue is, of course, that if the plaintiff's claims were not preempted by ERISA, there was no federal question presented and the removal to the federal court was improper.
>
> ***
>
> [If] it is not completely preempted, it is not subject to removal to the federal courts.

262 F.3d at 613, 615. The court found that the plaintiff's race and sex discrimination claims were not completely preempted by ERISA: her ERISA benefits issue was only part of her alleged damages, not an element of a § 502(a) claim, and thus, not "within the scope of the civil enforcement

provisions of § 502(a)." Therefore, her case was not removable, and the federal courts lacked jurisdiction. *Id.* at 615. The court instructed the district court to remand the case to state court. *Id.*

In the case at bar, both Plaintiff and Defendant reside in Michigan; there is no diversity jurisdiction, and no other basis for federal question jurisdiction. Under *Wright,* the effect of this is clear: if ERISA does not completely preempt at least one of Plaintiff's claims, then the case was improperly removed, and this Court lacks subject matter jurisdiction.

## 2. Whether ERISA's Complete Preemption Doctrine Applies

ERISA contains a civil enforcement mechanism whereby a plan participant or beneficiary may sue to, *inter alia,* enforce his/her rights under an ERISA plan, and/or enjoin a violation of his/her ERISA rights. That civil enforcement mechanism is contained in § 502(a), which is codified at 29 U.S.C. § 1132(a).

ERISA also contains a provision (§ 510) which provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.... The provisions of section 1132 ... shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. The Supreme Court has stated that § 502(a) (codified at 29 U.S.C. § 1132(a)) is "the exclusive remedy for vindicating § 510–protected rights." *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 145, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). In other words, § 510 of ERISA "does not stand alone; by its terms it gains its enforcement vitality from [§ ] 502." *Wood v. Prudential Insurance Co.,* 207 F.3d 674, 677 (3d Cir.2000). Furthermore, § 502(e)(1) provides that actions under § 510 are within the "exclusive jurisdiction" of the federal courts. 29 U.S.C. § 1132(e)(1) ("the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by ... a participant ...").

Two Supreme Court cases, when read together, guide the analysis. In 1987, the Supreme Court decided *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). In that case, the plaintiff sued his employer, General Motors, in state court, alleging state law causes of action related to his termination and loss of benefits. The plaintiff was paid disability benefits for a short period, due to "severe emotional problems," but after a series of required medical examinations, GM terminated him for not returning to work after its physician had determined he was no longer disabled. His state law claims were tort and contract claims, such as breach of contract and wrongful termination. GM removed to federal court (Eastern District of Michigan) on ERISA preemption grounds; the district court (Newblatt, J.) denied the plaintiff's motion to remand, finding the case properly removable. The Sixth Circuit reversed, holding that the causes of action were state law causes of action, and under the well-pleaded complaint rule, the case was not removable. *Taylor v. General Motors Corp.,* 763 F.2d 216 (6th Cir. 1985).

The Supreme Court granted cert, and reversed in *Metropolitan Life, supra.* The Supreme Court discussed the broad wording of the preemption clause, and held that a cause of action existed for the plaintiff's claims under § 502(a)(1)(B). Finding a cause of action under § 502(a) led the

Court to determine that the plaintiff's state law claims were completely preempted by ERISA. 481 U.S. at 66, 107 S.Ct. 1542. The Court specifically held that:

> Congress has manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court. Since we have found [plaintiff's] cause of action to be within the scope of § 502(a), ... this suit, though it purports to raise only state law claims, is necessarily federal in character ... and is removable to federal court....

*Id.*

As can be seen from the facts alleged, *Metropolitan Life* is factually extremely close to the case at bar. However, in that case, the Supreme Court read the complaint's prayer for relief as a request for ERISA benefits; the Court, although it could have, did not address the applicability of § 510. Thus, while closely analogous to this case, *Metropolitan Life* does not compel, but rather informs the result reached in this case.

About three years after *Metropolitan Life*, the Supreme Court decided *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), which is also analogous to the case at bar. In *Ingersoll–Rand*, the plaintiff sued his employer after being terminated shortly before his pension would have vested, claiming that was a motivating factor in his discharge. The case was brought in state, rather than federal court, and thus, whether the federal court had jurisdiction was not at issue. The issue before the Court was whether ERISA preempted (rather than whether it completely preempted) the plaintiff's state law claim for wrongful termination. The Supreme Court held that

ERISA both expressly and implicitly preempted the cause of action.

As to express preemption, the Supreme Court relied on the breadth of § 514(a), the preemption clause in ERISA (codified at 29 U.S.C. § 1144(a)) because:

> a claim that the employer wrongfully terminated plaintiff primarily because of the employer's desire to avoid contributing to, or paying benefits under, the employee's pension fund [ ] relates to an ERISA-covered plan within the meaning of § 514(a), and is therefore preempted.

*Id.* at 140, 111 S.Ct. 478. As to implicit, or "conflict" preemption, the Supreme Court held:

> Even if there were no express pre-emption in this case, the Texas cause of action would be preempted because it conflicts directly with an ERISA cause of action. McClendon's claim falls squarely within the ambit of ERISA § 510.... We have no doubt that this claim is prototypical of the kind Congress intended to cover under § 510.

*Id.* at 142–43, 111 S.Ct. 478.[3]

In further explaining the conflict preemption due to the existence of a claim under § 510, the Supreme Court specifically held that "it is no answer to a preemption argument that a particular plaintiff is not seeking recovery of pension benefits." *Id.* at 486, 111 S.Ct. 478. The Court cited *Metropolitan Life, supra,* noting the complete preemption doctrine as it applied to § 502(a) claims, then noted that a § 510 claim was dependent on § 502(a) as "the exclusive remedy for vindicating § 510–protected rights." *Id.* While this may technically have been unnecessary, as the case was not dependent upon a finding of complete preemption, it is nonetheless

---

**3.** These were, of course, alternative holdings, such that a party may argue that one or the other was gratuitous, and is therefore dicta.

However, even if technically dicta, the analysis is persuasive.

something this Court should be mindful of in its analysis.

Based on the above analysis, the Court finds that a state law cause of action which purports to set forth a claim that a person has been discharged, discriminated against, retaliated against, harmed, etc., for claiming or attempting to claim his/her right to receive (or continue to receive) ERISA benefits, falls directly under the exclusive remedy Congress created in § 510. As such, § 510 completely displaces (via the preemption clause, codified at 29 U.S.C. § 1144(a)) all state law causes of action on that basis. Thus, all such claims are completely preempted by ERISA.

Other federal courts recently presented with this issue have agreed with this analysis. The Third Circuit, in *Wood v. Prudential Insurance Co.*, 207 F.3d 674, 677–79 (3d Cir.2000), held that because the employee's claim of wrongful discharge was based on an ERISA "benefits-defeating" motive, it came directly under § 510. The court noted that § 510 claims are enforced via ERISA's civil enforcement provision found in § 502(a), which the Supreme Court has noted is sufficiently preemptive to be require complete preemption (*see Ingersoll–Rand, supra*). Thus, the Third Circuit found the plaintiff's claim completely preempted. *Id.*

And in *Kalo v. Moen Inc.*, 93 F.Supp.2d 869 (N.D.Ohio 2000), the plaintiff alleged, *inter alia*, that he was fired shortly before he would be eligible for pension benefits, and because he was the only remaining employee eligible for health and medical benefits from retirement until death. The court carefully analyzed the preemption issue(s), and found that the plaintiff's claim for termination "in violation of public policy," although an "artful attempt," did not disguise the true nature of the § 510 claim, because "the gravamen of [plaintiff's] claim is that [defendant] discharged him in order

to prevent him from attaining plan benefits." *Id.* at 875. The court reasoned that because ERISA specifically provided for a § 510 claim, and contained a broadly-worded preemption clause, Congress intended § 510 to be the exclusive remedy, such that the plaintiff's state law claim was completely preempted (i.e., "displace[d]"), and thus removable. *Id.*

Based on the holding of *Wright v. General Motors Corp., supra*, if the Court were to find that ERISA does not completely preempt at least one of the causes of action in Plaintiff's complaint, the proper action would be to remand the case to state court. *See Wright, supra*, 262 F.3d at 613, 615. Therefore, the Court will not discuss whether Plaintiff can state a claim under state law for wrongful termination, etc., aside from the ERISA analysis; the Court simply would not have jurisdiction to so decide, if it were to conclude that complete preemption does not apply to at least one claim.

In the instant case, Plaintiff's entire complaint deals with his rights (and responsibilities) under the disability benefits plan. All three causes of action (wrongful termination, retaliation, and IIED) are premised on Defendant's decision to discontinue Plaintiff's disability benefits and require him to return to work, or else provide additional documentation. The gravamen of Plaintiff's complaint is that he was terminated/retaliated against/harmed by Defendant's decision to insist on strict compliance with the ERISA plan procedures for granting his (continued) receipt of disability benefits and/or to "save some money" (*see* Pl.'s Dep., Exh. G to Def.'s MSJ, at 82) by not having to pay his disability benefits. Although Plaintiff attempts to argue that because he is not seeking ERISA benefits as a remedy, and because his theory of liability for the wrongful termination is that Defendant's

letter gave Plaintiff two choices (return to work with the required medical documentation, or write them a letter), that this has nothing to do with ERISA. That is simply not the case. *See Ingersoll–Rand, supra,* 498 U.S. at 145, 111 S.Ct. 478 ("[I]t is no answer to a preemption argument that a particular plaintiff is not seeking recovery of pension benefits."); *see also Int'l Union United Automobile Aerospace & Agricultural Implement Workers v. Auto Glass Employees Federal Credit Union,* 858 F.Supp. 711, 722 (M.D.Tenn.1994) (plaintiff's "state wrongful discharge cause of action purports to provide a remedy for the violation of rights expressly protected by ERISA [§ 510].... Since such rights are protected and enforceable pursuant to ERISA, preemption applies"; granted defendant's motion to dismiss the claim).

Rather, the entirety of the complaint centers around Plaintiff's exercise of his right to disability benefits under ERISA, and Defendant's alleged motive to terminate him for his exercising of those rights. This is exactly the type of "benefits-defeating" motive that is at the center of a § 510 claim. The existence of a (possibly inartfully-worded) letter from Defendant insisting upon strict adherence to the plan's requirements for proof of disability does not change this analysis; Plaintiff must proceed, if at all, by claiming a cause of action under § 510 of ERISA.

Therefore, based on the above analysis, the Court finds that all three of Plaintiff's causes of action are completely preempted by ERISA.

Even if Plaintiff is attempting to concede that his retaliation claim is completely preempted, but is not conceding preemption regarding his "wrongful discharge" and "IIED" claims, the result is the same. Even if the wrongful discharge and IIED are not completely preempted by ERISA, they still fall under ERISA's general preemptive scope, because they "relate to" his claim for benefits. *See Foster v. Blue Cross & Blue Shield of Mich.,* 969 F.Supp. 1020, 1024 (E.D.Mich.1997) (emotional distress claims preempted by ERISA if related to ERISA benefits decisions); *Int'l Union, United Automobile Aerospace & Agricultural Implement Workers of Am. v. Auto Glass Employees Federal Credit Union,* 858 F.Supp. 711, 724 (M.D.Tenn.1994) (wrongful termination claims preempted by ERISA if related to ERISA benefits decisions). Here, both of the letters Plaintiff wishes to rely upon to support Counts I and III specifically reference Plaintiff's employee-sponsored disability benefits. Therefore, they "relate to" ERISA. So, if these claims are merely preempted, they are in fact useless to Plaintiff. He would be left, in that case, with Count II (his § 510 retaliation claim), and nothing else. Again, the result reached in this opinion would not change.

### 3. Whether Plaintiff Can Establish a § 510 Cause of Action

Due to the previous analysis, it is clear that Plaintiff must proceed, if at all, under § 510 of ERISA (29 U.S.C. § 1140). In *Smith v. Ameritech,* 129 F.3d 857 (6th Cir.1997), the Sixth Circuit set forth the requirements to state a prima facie cause of action under § 510:

> To state a claim under § 510, the plaintiff must show that an employer had a specific intent to violate ERISA. In the absence of direct evidence of such discriminatory intent, the plaintiff can state a prima facie case by showing the existence of (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.... In order to survive defendant's motion for summary judgment, plaintiff must come forward with evidence from

which a reasonable jury could find that the defendant's desire to avoid [ERISA benefit] liability was a determining factor in plaintiff's discharge.... Summary judgment is appropriate if plaintiff fails to establish a prima facie case....

*Id.* at 865 (internal citations and quotations omitted). In *Smith,* the court found that because the plaintiff could not establish a causal link between the likelihood of plaintiff's entitlement to future benefits and an adverse employment action, the defendant was entitled to summary judgment. *Id.* at 866.

█ In this case, not only has Plaintiff failed to come forth with any evidence supporting a § 510 claim, but he has disavowed such a claim. (Pl.'s Resp. at 6: "Plaintiff, however, has not alleged a violation of ERISA in his complaint."). It is difficult, if not impossible, to analyze the likely success of such a claim without the assistance of Plaintiff in providing evidence to support the claim, or at least, a genuine issue of material fact.

While Plaintiff's claim for discharge meets element (1) for prohibited employer conduct, and the Court will assume element (3) would probably be met (assuming later-released evidence would show Plaintiff to be eligible for disability benefits), Plaintiff has nonetheless failed to present evident to show not only a benefit-defeating motive on the part of Defendant, but also a causal link between Defendant's desire to avoid paying his ERISA benefits and his termination.

Defendant's letter which Plaintiff wishes to rely on does not support a § 510 claim. Instead, if anything, it shows that Defendant was not acting with a "benefits-defeating" motive when it terminated Plaintiff. Defendant's letter, written nearly a month after Plaintiff should have returned to work per the IME result, gave him even more time to comply with the ERISA plan requirements that he substantiate his dis-

ability. It did not (and could not, *see* provision 8.04 of the plan, Exh. B to Def.'s MSJ, at 13) modify/waive the plan's requirement that the person claiming disability provide sufficient proof of the disability. Defendant's insistence on compliance with the plan cannot support a view that Defendant was intending to avoid its ERISA obligations to Plaintiff. Quite the opposite: even under a favorable view of the evidence, it is apparent that Plaintiff is complaining now because he was being forced to comply with the requirements of the plan, in other words, to submit evidence supporting his claim for disability, in order to continue receiving benefits. He cannot now complain that Defendant should have permitted him to bend the rules.

Therefore, it appears that even under a favorable view of the evidence, Plaintiff cannot maintain a § 510 action against Defendant. Because Plaintiff's claims are completely preempted by § 510 of ERISA, and because Plaintiff cannot maintain a § 510 claim, Defendant is entitled to summary judgment.

### III. ORDER

For the reasons stated above, the Court GRANTS Defendant's motion for summary judgment. Let judgment enter accordingly.

**SO ORDERED.**